119 F.3d 756
 13 IER Cases 58, 21 Employee Benefits Cas. 2390,
6 A.D. Cases 1714, 23 A.D.D. 93, 10
NDLR P 166,
97 Cal. Daily Op. Serv. 5463,
97 Daily Journal D.A.R. 8860
 Melton NELSON; Lanita Nelson, Plaintiffs-Appellants,
v.
CYPRUS BAGDAD COPPER CORPORATION; Cyprus Amax Mineral
Company; Randy Scott, husband; Jane Doe Scott, wife; Gary
Hutchinson, husband; Kathleen Hutchinson, wife, aka Jane
Doe Hutchinson; Janette Bush, wife; John Doe Bush,
husband; Joseph Mortimer, husband; Jane Doe Mortimer,
wife; Jack McKeon, husband; Jane Doe McKeon, wife; Paul
Austin, husband; Jane Doe Austin, wife; Raymond Bramlett,
husband; Jane Doe Bramlett, wife; Lloyd Flannigan,
husband; Jane Doe Flannigan, wife, Defendants-Appellees.
 No. 95-17083.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1996.
Decided July 10, 1997.
 
 Michael E. Medina, Jr., Kimble, Gothreau & Nelson, Tucson, AZ, for plaintiffs-appellants.
 William M. Shattuck, Phoenix, AZ, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Stephen M. McNamee, District Judge, Presiding. D.C. No. CV-95-00237-SMM.
 Before: REINHARDT and RYMER, Circuit Judges, and TANNER, District Judge.*
 Opinion by Judge Reinhardt; Dissent by Judge Rymer.
 REINHARDT, Circuit Judge:
 
 
 1
 We are asked on this appeal to determine whether arbitration provisions contained in an Employee Handbook unilaterally issued by an employer serve to waive an employee's rights to a judicial determination of his claims under the Americans with Disabilities Act of 1990 and the Arizona Civil Rights Act.
 
 I. FACTS
 
 2
 Plaintiff Melton Nelson worked as a full-time employee of Cyprus Bagdad Copper Corporation (Cyprus) for nineteen years, most recently as a Senior Maintenance Technician in the Electrical Department at the company's mine in Bagdad, Arizona. He asserts that he worked only day shifts prior to August 1994, when Cyprus initiated an extensive reorganization of its Bagdad mining operations. At that time, Cyprus announced its intention to eliminate over 100 salaried and hourly positions through a voluntary "Severance Enhancement Program" and, to the extent necessary, through involuntary layoffs and employee reclassifications--with those employees who volunteered receiving a better severance package than those who did not. Nelson also asserts that while considering voluntary severance he asked his supervisor how his department, and specifically, his position, might be affected by the changes. He contends that his supervisor told him that no major changes were planned, and, for that reason, he did not seek voluntary severance.
 
 
 3
 After the deadline for voluntary severance passed, the Electrical Department was reorganized and Nelson was required to work rotating 12-hour shifts. He contends that he notified his supervisor that he had previously experienced medical difficulties in working rotating shifts. After making some initial efforts to accommodate him, Cyprus terminated Nelson's employment in October 1994.[1]
 
 THE HANDBOOK
 
 4
 In June 1993, a little over a year before Nelson was fired, Cyprus issued an Employee Handbook to each employee. The Handbook contained a grievance resolution procedure that Cyprus asserts has applied to all employees since July 1, 1993, the effective date set forth in the Handbook. Nelson signed an acknowledgment that he had received the Handbook, and agreed to read and understand its contents, and to contact his supervisor if he had any questions:
 
 
 5
 I have received a copy of the Cyprus Bagdad Copper Corporation Handbook that is effective July 1, 1993 and understand that the Handbook is a guideline to the Company's policies and procedures. I agree to read it and understand its contents. If I have any questions regarding its contents I will contact my supervisor or Human Resources Representative.
 
 
 6
 The Handbook contains a section entitled "Problem Solving Process." That section spells out two procedures for resolving employment disputes: (1) the "Open Door Policy" which provides informal access to supervisors and members of the company's management team and (2) the "Complaint Resolution Policy" which contains the more formal grievance process culminating in arbitration.
 
 
 7
 The "Scope of Employee Handbook" section of the Employee Handbook provides as follows:
 
 
 8
 The Open Door Policy and the Complaint Resolution Policy described in this Handbook are the sole and exclusive procedures for the processing and resolution of any problem, controversy, complaint, misunderstanding or dispute that may arise concerning any aspect of your employment or termination of employment including any dispute arising out of or based upon any state or federal statute or law applicable to your employment, and including any dispute concerning a claim that the provisions of the Handbook have been violated. You are precluded from filing any action with any court concerning any matter which could have been addressed through these procedures.[2]
 
 
 9
 Under the Complaint Resolution Policy, an employee must submit a written complaint to his or her supervisor within ten days of the occurrence "that gave rise to your problem." If dissatisfied with the supervisor's response, the employee may appeal to his or her department manager within five days of receiving that response. If still dissatisfied, the Complaint Resolution Policy allows an appeal to the Vice President, within five days of receiving the department manager's response. The decisions of the Vice President are final unless a claim involves corrective action, discharge, or a claim that the Handbook's "Equal Opportunity/Non-harassment policy" has been violated. In these cases the employee "may appeal to arbitration." The appeal to arbitration must be made in writing and submitted to the company's Human Resources Department within ten days of receiving the Vice President's response.
 
 PROCEDURAL HISTORY
 
 10
 Two days after he was fired, Nelson sent a letter to Randy Scott, Vice-President and General Manager, complaining that his termination was "not only wrong but illegal."[3] Scott sent a written response one week later, in which he supported the termination and informed Nelson that
 
 
 11
 [i]f you are not satisfied with this response, the next step of the Complaint Resolution Policy requires that you appeal to arbitration. The appeal to arbitration must be in writing and must be submitted to the Human Resources Department within 10 calendar days after you receive this response to your appeal.
 
 
 12
 According to Janette Bush, Manager of Human Resources at Cyprus, Nelson informed her both on the day he was fired and two day later that, upon advice of counsel, he would not appeal his termination to arbitration.
 
 
 13
 Instead, Nelson and his wife filed a complaint in the United States District Court alleging that the defendants had violated the Americans with Disabilities Act ("ADA"). The complaint also alleged a violation of the Arizona Civil Rights Act ("ACRA"), and asserted a number of other pendent state claims. Named as defendants were Cyprus Bagdad Copper Corporation, Cyprus Amax Minerals Company, and several Cyprus employees. The district court granted summary judgment to all defendants holding that the arbitration clause contained in Cyprus' Employee Handbook was enforceable and that Nelson had knowingly and voluntarily agreed to waive his rights to a judicial forum. The Nelsons appeal.
 
 II. ANALYSIS
 
 14
 Defendants moved for summary judgment on the ground that Nelson's claims were foreclosed by his agreement to submit the disputes to the grievance and arbitration procedures set forth in the Cyprus Bagdad Copper Corporation's Employee Handbook. The district court analyzed the arbitrability of Nelson's claims under the waiver standard for Title VII claims we set forth in our opinion in Prudential Insurance Co. of America v. Lai, 42 F.3d 1299 (9th Cir.1994), and held that "no genuine issue of material fact exists regarding whether Nelson knowingly and voluntarily waived his rights to file a statutory discrimination claim." Nelson argues on appeal that, contrary to the conclusion reached by the district court, there was no valid waiver of any of his statutory rights under the Americans with Disabilities Act and the Arizona Civil Rights Act, and that, accordingly, the district court erred in granting summary judgment. We agree.[4]
 
 
 15
 Prior to 1991, when the Supreme Court announced its decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), federal anti-discrimination laws, specifically Title VII, had been "interpreted to prohibit any waiver of ... statutory remedies in favor of arbitration, even a knowing waiver." Lai, 42 F.3d at 1304 (citing E.E.O.C. v. Children's Hospital Medical Center, 719 F.2d 1426, 1431 (9th Cir.1983)). That interpretation found its source in a line of Supreme Court cases beginning with Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In Gilmer, however, the Supreme Court held that individuals generally may contractually agree to arbitrate employment disputes and thereby waive certain statutory rights to which they would otherwise be entitled. Lai, 42 F.3d at 1303.
 
 
 16
 However, Congress can and sometimes does preclude waivers of a plaintiff's rights under a particular statute. Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir.1996). Congressional intent to preclude waivers of statutory rights may be found in the text or legislative history of the act in question, or in an "inherent conflict" between the purported waiver and the act's underlying purposes. Gilmer, 500 U.S. at 26, 111 S.Ct. at 1652. Here, we address the subject of Congressional intent, keeping in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Id. (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).
 
 
 17
 When the question is whether a plaintiff may agree to waive a right to a judicial forum in favor of arbitration, it is the plaintiff's burden to demonstrate Congressional intent to forbid such a waiver. Id. In Gilmer, the Court concluded that the plaintiff had not demonstrated that Congress, in enacting the Age Discrimination in Employment Act ("ADEA"), had intended generally to preclude all waivers of the right to a judicial forum. We extended the Gilmer holding to claims brought under Title VII in Mago v. Shearson Lehman Hutton, 956 F.2d 932, 935 (9th Cir.1992), holding that the plaintiff had not "met her burden of showing that Congress, in enacting Title VII, intended to preclude arbitration of claims under the Act."[5] We assume, arguendo, that the Gilmer holding regarding the enforceability of valid compulsory arbitration agreements applies in the context of the Americans with Disabilities Act as well.[6]
 
 
 18
 Nelson does not argue on appeal that all mandatory arbitration agreements are unenforceable under the ADA.[7] Instead, he argues that he may be required to arbitrate his claims under the ADA only if he "knowingly and voluntarily" agreed to waive his right to a judicial forum.[8] Just as Congress may entirely preclude a waiver of the plaintiff's statutory rights, it may create other more limited restrictions on the enforcement of arbitration agreements. Kuehner, 84 F.3d at 319. In Lai, we held that it was "apparent from the text and legislative history of Title VII" that Congress had required "at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes." Lai, 42 F.3d at 1304. In the case before us, the parties agree that the waiver analysis set forth in Lai applies equally in the context of the ADA. They are correct. Just as a knowing agreement to arbitrate disputes covered by the act is required by Title VII, so too a knowing agreement is required under the ADA.[9]
 
 
 19
 The undisputed facts in the record before us demonstrate that Nelson did not enter into a "knowing agreement" to arbitrate his claims under the ADA.[10] First, we conclude that the acknowledgment form signed by Nelson does not suffice as a valid waiver under Lai. When Nelson was given a copy of the revised employee Handbook, he signed an acknowledgment of receipt. Nothing in that acknowledgment notified Nelson either that the Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA. Under the express terms of the acknowledgment, Nelson agreed only to "read and understand" the Handbook. He did not agree to be bound by its provisions. Certainly, nothing in the acknowledgment form notified him that by agreeing to "read and understand," he was additionally agreeing to waive any rights or remedies afforded him by civil rights statutes that might be inconsistent with the terms set out in the Handbook. Indeed, the acknowledgment form itself suggests quite the opposite by characterizing the Handbook as a "guideline" to the company's unilaterally promulgated policies and procedures. Merely signing the form did not in any way constitute a "knowing agreement to arbitrate," and thereby to surrender his statutory right to a judicial forum.
 
 
 20
 Moreover, we conclude that Nelson's continued employment after he received the Handbook, and after he read it (and we assume he did), did not amount to the type of "knowing agreement" contemplated by Lai. Nothing in either the acknowledgment form or the Handbook itself put Nelson on notice that by not quitting his job he was somehow entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute. Any bargain to waive the right to a judicial forum for civil rights claims, including those covered by the ADA, in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question. That did not occur in the case before us.
 
 
 21
 We conclude that, in line with Lai, the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a "knowing agreement" on the part of an employee to waive a statutory remedy provided by a civil rights law. We conclude further that the right to a judicial forum is not waived even though the Handbook is furnished to the employee and the employee acknowledges its receipt and agrees to read and understand its contents. Finally, we hold that the right is not waived even when the employee performs his obligations by commencing or continuing to do his assigned work and accepting a paycheck in return.[11] Accordingly, the district court erred in concluding that there was a valid waiver of Nelson's right to a judicial determination of his ADA claims and in granting summary judgment to the defendants.[12]
 
 
 22
 For the same reason that the court erred with respect to Nelson's ADA claims it erred with respect to his claims under the Arizona Civil Rights Act. In Lai, although plaintiffs brought their sexual harassment and discrimination claims under the relevant state statutes and did not sue directly under Title VII, we nevertheless examined the arbitrability of their claims under the Title VII "knowing agreement to arbitrate" standard. Noting that "[p]arallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme," we held that the same standard would apply to both. Lai, 42 F.3d at 1303 n. 1 (citing Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); and Salgado v. Atlantic Richfield, 823 F.2d 1322, 1326 (9th Cir.1987)) The ADA expressly adopts Title VII's enforcement procedures, including the incorporation of parallel state anti-discrimination laws such as the relevant portions of the Arizona Civil Rights Act. See 42 U.S.C. § 12117. Accordingly, as in Lai, we hold that the question whether Nelson waived his rights under the ACRA is governed by the same standard as the question whether he waived his rights under the ADA. Given our conclusion with respect to the ADA claims, we must reverse as to the ACRA claims as well.[13]
 
 III. CONCLUSION
 
 23
 Because we hold that Nelson did not knowingly waive his statutory rights to a judicial forum under the ADA and the Arizona Civil Rights Act, we reverse the decision of the district court granting summary judgment in favor of the defendants as to those claims and remand for further proceedings. We also vacate and remand as to the remaining claims.
 
 
 24
 REVERSED IN PART, VACATED IN PART and REMANDED.
 
 RYMER, Circuit Judge, dissenting:
 
 25
 Both parties agree that employees can be bound by an agreement to arbitrate employment discrimination claims (including claims under the ADA) if they knowingly agree to do so. This much follows from Prudential Insurance Co. v. Lai, 42 F.3d 1299 (9th Cir.1994), although Nelson does argue that employment contracts are exempt from coverage under the Federal Arbitration Act, 9 U.S.C. § 1. The majority opinion punts the coverage question, though it is unclear to me that it can be avoided since the arbitration provisions at issue in this case are in an Employee Handbook--not a securities registration application--and are binding (if at all) because they are part of Nelson's employment contract with Cyprus. Cf. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991) (finding no need to address the scope of the § 1 exclusion as the arbitration clause being enforced was not in a contract of employment, but in Gilmer's securities registration application).
 
 
 26
 In any event, Lai indicates that an employee may only be obliged to arbitrate statutory claims such as those arising under Title VII if he or she has "knowingly agreed" to submit such disputes to arbitration. 42 F.3d at 1304. Neither Lai's U-4 form nor the U-4 manual described the types of disputes that were to be subject to arbitration, or referred to employment disputes. As there was no way that Lai could have understood that in signing the form, she was agreeing to arbitrate sexual discrimination suits, we held that Lai was not bound by any valid agreement to arbitrate employment discrimination claims. Id. at 1305.
 
 
 27
 Nelson's case cannot be so easily resolved, because Cyprus's Employee Handbook does specifically refer to arbitration of employment disputes including statutory claims and those arising under the equal employment opportunity laws.[1] The question, therefore, is whether the Employee Handbook, which Nelson acknowledged receiving and agreed to read and understand before it became effective, is a valid agreement to arbitrate employment disputes, including Nelson's ADA claim. Under Lai, this depends on whether Nelson "knowingly contract[ed] to forego [his] statutory remedies in favor of arbitration." Id.
 
 
 28
 The answer to this question, in turn, must depend on Arizona employment contract law. As the Supreme Court instructed in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), "[w]hen deciding whether the parties decided to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." Id. at 944, 115 S.Ct. at 1924; see also Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, ----, 116 S.Ct. 1652, 1655, 134 L.Ed.2d 902 (1996) (noting that state law "concerning the validity, revocability, and enforceability of contracts" governs agreements to arbitrate); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 833-34 (8th Cir.1997) (following First Options and interpreting arbitration agreement in light of state law); Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir.1996) (same); Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc., 78 F.3d 474, 478 (10th Cir.1996) (same); Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 452 (2d Cir.1995) (same).
 
 
 29
 The district court noted that Arizona law recognizes that an employee handbook may be incorporated into an employment contract. See, e.g., Leikvold v. Valley View Community Hosp., 141 Ariz. 544, 688 P.2d 170, 174 (1984) (en banc). It found that Nelson's affidavit did not raise a genuine issue of fact regarding whether he knowingly and voluntarily contracted away his right to file a statutory discrimination claim in court, and concluded that Nelson was subject to the arbitration clause in the Employee Handbook.
 
 
 30
 Nelson, of course, contends that he did not knowingly and voluntarily enter into the arbitration clause, but he raises no issue on appeal, and doesn't argue, that the district court's conclusion was erroneous under Arizona law. For that reason, there is no need for us to go further.
 
 
 31
 The majority opinion's entire discussion about "knowing agreement," supra at 8128-30, is thus dicta and, beyond that, without persuasive force as it is also entirely without citation to authority. I therefore dissent.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 The complaint was filed by Nelson and his wife. For purposes of this opinion, we treat Nelson as the plaintiff. See infra note 12
 
 
 [2]
 Similarly, the "Problem Solving Process" section of the Handbook states that
 [t]he Open Door Policy and the Complaint Resolution Policy are the sole and exclusive procedures for the processing and resolution of any problem, controversy, complaint, misunderstanding or dispute between an employee and Cyprus Bagdad. This includes any claim that the provisions of this Handbook have been violated and any claim that any state or federal statute or law applicable to your employment has been violated.
 
 
 [3]
 In their answering brief, defendants characterize Nelson's letter as an appeal of his termination "consistent with the Complaint Resolution Policy." Nelson's letter, however, makes no mention of the Complaint Resolution Policy
 
 
 [4]
 Nelson also argues that Section 1 of the Federal Arbitration Act ("FAA") broadly exempts employment contracts from its coverage. See Matthew W. Finken, "Workers' Contracts" Under the United States Arbitration Act: An Essay in Historical Clarification, 17 Berkeley J. Emp. & Lab. L. 282 (1996). Similarly, he contends that Arizona state law exempts employment contracts from coverage under its arbitration provisions. Accordingly, Nelson asserts that the arbitration clause at issue is unenforceable. In Gilmer, the Supreme Court expressly reserved the question whether Section 1 of the FAA broadly exempts employment contracts. 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2. The scope of the Section 1 exemption remains an open question in this circuit, as well. See Mago v. Shearson Lehman Hutton, 956 F.2d 932, 934 (9th Cir.1992). Because we reverse on other grounds, we again decline to reach that question, once more leaving it for another day
 
 
 [5]
 The plaintiffs in Lai argued that the Gilmer holding, and its extension to Title VII claims in our decision Mago, had been overruled by the Civil Rights Act of 1991. We found it unnecessary to reach that question in Lai, however, given our resolution of the appeal. Lai, 42 F.3d at 1303 n. 2. We likewise find it unnecessary to do so here
 
 
 [6]
 In this appeal, Nelson does not argue that the legislative history of the ADA demonstrates that Congress intended to preclude waivers of statutory rights provided by the act or that Gilmer 's limiting of Gardner-Denver should not be extended to claims under the ADA. See H.R.Rep. No. 101-485, pt. 3, at 76-77 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 499-500 (stating that "any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of this Act" and stating that "the approach articulated by the Supreme Court in Alexander v. Gardner-Denver Co. applies equally to the ADA"); H.R. Conf. Rep. No. 101-596, at 89 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 598 (stating that "[i]t is the intent of the conferees that the use of these alternative dispute resolution procedures is completely voluntary" and adopting by reference "the statement of the House Judiciary Report [H.R. 101-485, pt. 3, at 76-77] regarding this provision"); see also Developments in the Law--Employment Discrimination, 109 Harv.L.Rev. 1568, 1677 (1996). Accordingly, we take no position on the issue, and assume, for the purposes of this appeal that Gilmer extends to claims brought under the ADA
 
 
 [7]
 By "mandatory arbitration agreements" we mean arbitration provisions that are contained in a general agreement or instrument of some kind and that mandate arbitration in the event that specific future disputes arise under the more general agreement. We do not consider in this opinion the validity of the narrower and more limited form of arbitration agreement that is entered into for the purpose of providing that a particular dispute that has already arisen will be submitted to arbitration and establishing the procedures governing the resolution of that particular dispute
 
 
 [8]
 The parties dispute whether compelling Nelson to submit his statutory claims to the grievance and arbitration procedures established in the Handbook would entail more than a mere waiver of the right to a judicial forum. Nelson argues that the company's arbitration mechanism would, in addition, shorten the statute of limitations and deprive him of attorneys' fees and exemplary damages. We need not resolve that dispute here: for purposes of this decision, we assume that the arbitration clause at issue constitutes a waiver of the right to a judicial forum only. If in fact it purports to waive other statutory rights as well, the waiver is a fortiori invalid, given the result we reach here
 
 
 [9]
 The legislative history relied on in Lai to support its conclusion that there must be "at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived" a judicial determination of his or her rights under Title VII mirrors the legislative history to the enactment of 42 U.S.C. § 12212, the alternative dispute resolution provision of the ADA. Compare Lai, 42 F.3d at 1304 (quoting H.R. Rep. 102-40, pt. 1, at 97 (1991), reprinted in, 1991 U.S.C.C.A.N. 549, 635), with H.R.Rep. No. 101-485, pt. 3, at 76-77 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 499-500, and H.R. Conf. Rep. No. 101-596, at 89 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 598. Accordingly, if "at least" a knowing agreement to waive is required by Title VII, "at least" a knowing agreement to waive is required under the ADA
 
 
 [10]
 Our decision in Lai and the legislative histories of the Civil Rights Act of 1991 and the Americans with Disabilities Act of 1990 all suggest that the agreement may have to be both "voluntary and knowing" in line with the Supreme Court's discussion in Alexander v. Gardner-Denver. See Lai, 42 F.3d at 1305 (citing Gardner-Denver, 415 U.S. at 51-52, 94 S.Ct. at 1021-22 (discussing possible waivers of Title VII claims)); see also H.R. Rep. 102-40, pt. 1, at 97; H.R.Rep. No. 101-485, pt. 3, at 76-77; H.R. Conf. Rep. No. 101-596, at 89. Because we conclude that there was no "knowing" agreement here, we have no occasion to determine whether any such agreement must be "voluntary" as well or what that term might mean in the context of unilaterally promulgated employee handbooks
 
 
 [11]
 We also reject defendants' argument that "[t]he fact that Mr. Nelson initiated a complaint with the Company pursuant to the Problem Solving Process promulgated under the Employee Handbook" demonstrates a valid waiver. The case before us is entirely different from Nghiem v. NEC Electronic, Inc., 25 F.3d 1437 (9th Cir.1994). In that case, plaintiff wrote a letter to the NEC's Human Resource Director "requesting to proceed with Step Four of NEC's problem resolution process--final and binding arbitration," and then "attended the hearings with a representative, presented evidence, and submitted a closing brief of fifty pages." Id. at 1440. Here, Nelson did not request arbitration. Indeed, at least twice he expressly refused to initiate or participate in arbitration. See supra note 3
 
 
 [12]
 All of the cases cited by the dissent with respect to the "knowing waiver" issue, except one, relate to the question of whether state or federal law applies. Of those cases, only Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir.1997), involves the waiver of a statutorily provided right or remedy, and we note, with respect to that case, that the Eighth Circuit has not adopted the "knowing waiver" standard that is the controlling law in this circuit. We also note that, as a general proposition, the waiver of a federal right is a question of federal law. See, e.g., Stroman v. West Coast Grocery, Co., 884 F.2d 458, 461 (9th Cir.1989) (citing Salmeron v. United States, 724 F.2d 1357, 1361 (9th Cir.1983), and Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir.1981)). However, the question of which law is applicable is of no significance here; whether state or federal law applies, the answer is the same. The words, "I agree to read and understand" (an employee handbook) do not constitute an agreement to waive a remedy provided by Congress in a civil rights statute
 
 
 [13]
 Because the district court did not address Nelson's remaining state law claims separately and we are therefore uncertain as to the basis for its actions, and because the pertinent issues relating to those claims have not been adequately briefed on appeal, we vacate as to the other state law claims and leave to the district court the consideration in the first instance of their proper resolution in light of the decision we reach today. The parties also do not address Nelson's wife's claims separately. While we treat them, for purposes of this opinion, as if they were identical to Nelson's, we do not foreclose the parties or the district court from considering any and all issues relating to those claims at the appropriate time in the proceedings
 
 
 [1]
 It provides:
 "The Open Door Policy and the Complaint Resolution Policy ... are the sole and exclusive procedures for the processing and resolution of any problem, controversy, complaint, misunderstanding or dispute that may arise concerning any aspect of your employment or termination of employment including any dispute arising out of or based upon any state or federal statute or law applicable to your employment ..." (Employee Handbook, p. 57).
 "The Open Door Policy and Complaint Resolution Policy are the sole and exclusive procedures for the processing and resolution of any problem, controversy, complaint, misunderstanding or dispute between an employee and Cyprus Bagdad. This includes ... any claim that any state or federal statute or law applicable to your employment has been violated." (Employee Handbook, p. 10).
 "The Complaint Resolution Policy is a somewhat more formal procedure [than the Open Door Policy] that includes a provision for arbitration in cases involving corrective action, discharge, or a claim that the Equal Employment Opportunity/Nonharassment Policy has been violated." (Employee Handbook, p. 10).
 "The arbitrator shall have authority to decide statutory issues, including those arising under the equal employment opportunity laws." (Employee Handbook, p. 13).