**William E. KUMMETZ, husband;**
**Arlene A. Kummetz, wife,**
**Plaintiffs–Appellants,**

v.

**TECH MOLD, INC. Defendant–Appellee.**

**No. 97–15350.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1998.

Decided Aug. 18, 1998.

William R. Hobson, Hobson & Ringler, Tempe, Arizona, for plaintiffs-appellants.

**1154**

John K. Ausdemore, Lonnie J. Williams, Jr., Snell & Wilmer, Phoenix, Arizona, for defendant-appellee.

Before: CANBY and REINHARDT, Circuit Judges, and RESTANI,[1] Judge, United States Court of International Trade.

CANBY, Circuit Judge:

Appellant William Kummetz sued Tech Mold, Inc. for employment discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101–12213, and the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41–1463(B). The district court granted the defendant's motion for summary judgment on the ground that Kummetz had waived his right to sue by agreeing to arbitrate any employment-related disputes. We review de novo, *see Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir.1996), and conclude that Kummetz did not knowingly enter into an arbitration agreement. Accordingly, we reverse and remand to the district court so that it may consider the merits of Kummetz's complaint.

## BACKGROUND

Tech Mold, a manufacturer of sophisticated steel molds, hired Kummetz as a mold maker in its prototype department. About four months after he started work, Tech Mold attempted to transfer Kummetz from the prototype department to a lower-paying position in the milling department, even though Kummetz had successfully completed a 90–day probationary period. Tech Mold's general manager, Len Graham, stated in an affidavit that the transfer was necessary because Kummetz did not possess the skills of a top mold maker, although he did possess excellent milling skills. Kummetz believed that Tech Mold attempted to transfer him only after it learned that he had previously undergone a kidney transplant. He resigned, but insisted that the transfer and the corresponding reduction in pay constituted a constructive discharge. Consequently, he filed a charge of disability discrimination

with the EEOC, secured a right-to-sue letter, and filed his complaint in district court. The district court dismissed Kummetz's action, reasoning that he had waived his right to a judicial forum.

The facts surrounding the purported waiver are not complicated. About a week after he began work, Tech Mold issued to Kummetz an Employment Information Booklet and an Information Booklet Acknowledgement. The Acknowledgement, which Kummetz signed, declared that:

> I understand and agree that I am covered by and must abide by the contents of this Booklet. I also understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee.
>
> . . . .
>
> I understand that the policies, practices and benefits set forth in this Booklet are subject to change at any time and without prior notice at the sole and unlimited discretion of the Company. The Company also reserves the right to interpret any ambiguity or any confusion about the meaning of any term in this Booklet, and that interpretation shall be final and binding.

The Acknowledgement did not mention or imply that the Booklet contained an arbitration provision.

The arbitration provision in the Booklet provided that:

> The Company and the employee shall submit to arbitration, as provided in the Dispute Resolution Policy, any alleged unlawful employment discrimination, termination or employment tort or benefit claim during or following employment. The parties waive all rights to a trial, with or without a jury, for resolution of any dispute covered by this policy.

The Booklet also stated that employees could obtain a copy of the Dispute Resolution Policy ("Policy") from Tech Mold's accounting office. Neither party alleges, however, that Kummetz did so. The ten-page Policy identified the types of disputes that were subject to arbitration, including those of discriminatory termination and constructive termination. It also set forth the rules of arbitration, which included a six-month limitations period for claims of unlawful discrimination.

---

1. The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

## DISCUSSION

■ The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., authorized courts to enforce agreements to arbitrate statutory claims.[2] *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). A particular statute, however, may either preclude or limit the enforcement of arbitration agreements with regard to claims arising under that statute. *See Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299, 1304–05 (9th Cir.1994). This court has previously concluded that the ADA requires that agreements to arbitrate disputes arising under the ADA must at least be knowing, which means that "the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir.1997); *cf. Lai*, 42 F.3d at 1304–05 (agreement to arbitrate Title VII disputes must be knowing). The arbitration agreement in the present case is not enforceable because it was neither explicitly presented nor explicitly accepted.[3]

■ The Acknowledgement did not notify Kummetz that the Booklet contained an arbitration provision, nor did it mention or imply anything about employment-related disputes, civil rights statutes, or waivers of remedies. The facts of this case are remarkably similar to those in *Nelson v. Cyprus Bagdad Copper Corp.*, supra. There the employer issued an employee handbook containing an arbitration clause. The employee then signed an acknowledgement, which declared that he had received the handbook and agreed "to read it and understand its contents." *Nelson*, 119 F.3d at 758. The acknowledgement did not, however, mention the arbitration clause. We concluded that the employee had not knowingly agreed to the arbitration clause because "[n]othing in that acknowledgement notified [the employee] either that the Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA." *Id.* at 761.

There was similarly no knowing waiver by Kummetz in this case. The Acknowledgement he signed did not refer to the fact that the "Information Booklet" that he had just received included an arbitration clause that waived his right to go to court. It is true that Kummetz acknowledged that he had read the Information Booklet and "agreed to the matters set forth in it," but there was in that Acknowledgement no *explicit* reference to arbitration or waiver of right to sue. Indeed, the Acknowledgement contained other language negating the idea that the booklet amounted to or included a contractual agreement. The Acknowledgement stated: "I understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee." It further stated: "I understand that the policies, practices and benefits set forth in this Booklet are subject to change at any time and without prior notice at the sole and unlimited discretion of the Company." The clear implication of these clauses is that the Booklet contained a set of non-contractual policies unilaterally established by Tech Mold.

Because the Acknowledgement failed to alert Kummetz to the fact that the Information Booklet contained an arbitration clause, the presence of the clause in the Booklet is insufficient under *Nelson* to effect a waiver.[4]

2. Whether § 1 of the FAA broadly excludes arbitration agreements within contracts of employment is an open question in this circuit. *See Nelson*, 119 F.3d at 759 n. 4. We do not reach that issue here.

3. Our conclusion that Kummetz did not knowingly waive his statutory right to a judicial remedy makes it unnecessary to address his contention that the Civil Rights Act of 1991 renders Tech Mold's arbitration clause ineffective because it was a condition of employment. *See Duffield v. Robertson, Stephens & Co.*, 144 F.3d 1182 (9th Cir.1998).

4. The 32–page Information Booklet appears to be a description of Tech Mold's employee benefits and unilaterally-imposed workplace rules. Section one of the Booklet decreed twenty rules governing workplace behavior, including guidelines for attendance, sobriety, and a positive attitude. The arbitration provision appeared at the end of this first section. Section two discussed a variety of issues related to compensation, such as vacation pay and overtime pay. Section three explained the insurance benefits that Tech Mold provided for its employees. Section four outlined Tech Mold's safety procedures. Section five discussed a variety of miscellaneous issues, such as the company bulletin board, jury duty, and the smoking policy. Except for the arbitration provision itself, no part of the Booklet suggested that it comprised or contained a bilateral contract of any sort. It is therefore not surprising that Kummetz failed to scrutinize the Booklet to determine whether it sheltered an exchange of promises between Tech Mold and its employees to "waive all rights to a trial."

Only if Tech Mold had specifically called Kummetz's attention to the arbitration clause in the Booklet would the clause suffice in the face of the uninformative Acknowledgement. *See Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir.1997) (arbitration clause on separate page in handbook given effect when employee had been required to remove that page from the handbook, sign it, and return it to the employer for filing).

We do not mean to suggest that one who is aware that he or she is entering a contract may avoid its effect by failing to read it. Such a rule would undermine reliance on written instruments. *See* Restatement (Second) of Contracts § 157 cmt. b (1979); *see also Golenia v. Bob Baker Toyota*, 915 F.Supp. 201, 204 (S.D.Cal.1996). The problem in Kummetz's case is that nothing in the Acknowledgement that he signed or the circumstances of record suggested that he was entering a contract. His waiver lacked the explicitness required by *Nelson*, 119 F.3d at 762.

We conclude, therefore, that Kummetz did not knowingly agree to arbitrate his ADA claim. The question whether Kummetz waived his rights under the ACRA is governed by the same standard as the question whether he waived his rights under the ADA. *See Nelson*, 119 F.3d at 762–63. Accordingly, we conclude that Kummetz did not knowingly enter into an agreement to arbitrate his claims arising under the ACRA.

## CONCLUSION

Tech Mold did not explicitly present the arbitration agreement, nor did Kummetz explicitly accept the agreement. As a result, Kummetz is entitled to have his claims arising under the ADA and ACRA resolved in the district court. We therefore reverse and remand.

Kummetz's request for attorney's fees pursuant to 42 U.S.C. § 12205 and Ariz.Rev. Stat. §§ 12–341.01, 41–1481 is premature; he has not established that he is a prevailing party on the merits.

**REVERSED AND REMANDED.**