

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPH DYLAG, | No. 16-15869 |
| Plaintiff-Appellant, | D.C. No. |
| v. | 2:16-cv-00120-APG-VCF |
| WEST LAS VEGAS SURGERY CENTER, LLC; TEAMWORKS PROFESSIONAL SERVICES, INC.; STEVEN KOZMARY; ROBERT BIEN, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Submitted October 10, 2017**
San Francisco, California

Before: O'SCANNLAIN, TASHIMA, and BYBEE, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Plaintiff-appellant Joseph Dylag filed suit against his former joint employers, West Las Vegas Surgery Center ("WLVSC") and Teamworks Professional Services, Inc. ("Teamworks"), as well as two WLVSC shareholders (collectively "Defendants"). Defendants moved the district court to dismiss the complaint and compel arbitration based on an arbitration provision in the employment contract between Dylag and WLVSC. The court granted the motion in an oral ruling.[1]

"We have jurisdiction under 9 U.S.C. § 16(a)(3)" and review the district court's decision to compel arbitration de novo. *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 816 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2274 (2017). "A party seeking to compel arbitration has the burden under the [Federal Arbitration Act ("FAA")] to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

1. The district court correctly held that Dylag must arbitrate his ADEA and ADA claims against WLVSC. "[I]ndividuals generally may contractually agree to arbitrate employment disputes and thereby waive certain statutory rights to which

---

[1] Dylag has not appealed the court's order compelling arbitration against the two WLVSC shareholders.

they would otherwise be entitled." *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 760 (9th Cir. 1997). However, an employee can only waive his right to litigate federal employment-discrimination claims in a judicial forum if "he does so knowingly." *Ashbey*, 785 F.3d at 1323 (internal quotation marks and citation omitted).

By entering into an employment contract with an arbitration provision that encompasses "any dispute aris[ing] out of" that contract, Dylag knowingly bargained away his right to litigate his ADEA and ADA claims against WLVSC. *Compare id.* at 1325–26 (holding that the employee "knowingly waived his right to a judicial forum for his Title VII claim" by signing a form acknowledging he would "adhere to" the employee handbook, including an arbitration agreement that the form explicitly cited), *with Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998) (finding that a similar acknowledgment form contained "no *explicit* reference to arbitration or waiver of right to sue" and therefore did not constitute a knowing waiver), *and Nelson*, 119 F.3d at 760–61 (same).

2. In contrast, while it is undisputed that Teamworks was Dylag's co-employer, the two did not share a contractual relationship. "Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer*

3

*v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks omitted). However, both signatories and "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles[,]" including equitable estoppel. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Following the U.S. Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), courts must apply *state* law in determining the applicability of these principles.[2] *Kramer*, 705 F.3d at 1128.

Nevada recognizes equitable estoppel's application in the arbitration context.[3] *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008). In a recent unpublished disposition, the Nevada Supreme Court applied the "commonly used framework" for equitable estoppel, which includes two avenues for compelling arbitration:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must "rely on the terms of the written agreement in asserting its claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes

---

[2] Prior to *Arthur Andersen*, courts applied federal common law in addressing arbitration provisions governed by the FAA. *See Kramer*, 705 F.3d at 1130–32 nn.5–6 (discussing the required application of state law post–*Arthur Andersen*).

[3] Although the parties have not cited any state case law regarding this issue, the contract's choice-of-law provision selects Nevada law, which therefore applies. *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Inv'rs*, 603 P.2d 270, 273 (Nev. 1979).

reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise out of and relate directly to the written agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

*Hard Rock Hotel, Inc. v. Eighth Judicial Dist. Court of State in & for Cty. of Clark*, 390 P.3d 166, at *1 n.4, *2 (Nev. 2017) (unpublished) (citation omitted).[4] In regard to the second avenue, we are confident that, like most jurisdictions that apply this framework, Nevada would require that the allegations of "substantially interdependent and concerted misconduct" be "founded in or intimately connected with the obligations of the underlying agreement." *See Kramer*, 705 F.3d at 1128–29 (citation omitted); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) ("Where other circuits have granted motions to compel arbitration on behalf of non-signatory defendants against signatory plaintiffs, it was essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration." (internal quotation marks and citation omitted)).

---

[4] The Nevada Supreme Court applied this framework in the context of estopping a contract signatory from avoiding a contractual jury-trial waiver rather than an arbitration provision, but the court noted that the same framework applies in both contexts. *Hard Rock Hotel*, 390 P.3d 166, at *1 n.4; *see also Ahlers v. Ryland Homes Nev., LLC*, 367 P.3d 743, at *2 (Nev. 2010) (unpublished) (citing to the Eleventh Circuit's widely-cited articulation of this framework in the arbitration context).

Here, Dylag's ADEA and ADA claims rely on and are founded in federal anti-discrimination statutes, not his employment contract. *See Kramer*, 705 F.3d at 1230–31 (holding that claims under consumer-protection and unfair-competition statutes did not rely on and were not "intimately founded in" the underlying contract); *Rajagopalan*, 718 F.3d at 847 (holding that the plaintiff was not equitably estopped from avoiding arbitration because his "statutory claims . . . [were] separate from the contract itself" (alteration omitted)). Moreover, Dylag has not alleged that WLVSC and Teamworks engaged in "substantially interdependent and concerted misconduct" because he has not asserted that Teamworks suspended or fired him, participated in these decisions, or discriminated against him. And even if made, such allegations would not be founded in or intertwined with the obligations in Dylag's employment contract with WLVSC.

Finally, Defendants have not argued that Dylag's state-law claims against Teamworks rely on his employment contract or that these claims, taken on their own, would justify equitable estoppel. This argument is therefore waived. *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009).

Accordingly, we reverse the district court only as to its order requiring Dylag to arbitrate his claims against Teamworks, and we remand the case for further proceedings.

**AFFIRMED** in part. **REVERSED** in part and **REMANDED**.

Each party shall bear its own costs on appeal.

*Dylag v. W. Las Vegas Surgery Ctr.*, No. 16-15869

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I join in Part 1 of the court's memorandum and in the judgment affirming the dismissal of Dylag's claims against West Las Vegas Surgery Center (WLVSC). I cannot join Part 2, which reverses the dismissal of Dylag's claims against Teamworks Professional Services, Inc. (Teamworks). I respectfully disagree with the majority's conclusion that the district court wrongly held that Dylag's claims against Teamworks were so intertwined with the claims against WLVSC as to require arbitration.

I

The principal question regarding the claims against Teamworks is whether, as a non-signatory, Teamworks can still compel Dylag to arbitrate his claims under a theory of equitable estoppel. Specifically, the district court held that Teamworks could compel arbitration because "the claims against Teamworks are identical to, for the most part, the claims against West Las Vegas . . . . [T]hose claims are intertwined and the relationship between those two entities . . . [is] so close that Mr. Dylag should be estopped from denying arbitration against Teamworks." In doing so, the court relied on and followed a decision from the Second Circuit, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127–28 (2d Cir. 2010).

The majority now holds that the district court's application of the *Ragone*

standard for equitable estoppel was in error—although it does not even cite the case. By the majority's interpretation, equitable estoppel should not apply unless the claims against the third party are "founded in or intimately connected with the obligations underlying the agreement," Mem. at 5—a requirement imposed in some courts but not (as demonstrated by *Ragone*) in others. Without its really addressing the issue, the majority's view seems to be that the district court erred in applying the more lenient estoppel standard of *Ragone* and other cases, rather than the stricter standard preferred by the majority.

The primary difficulty with this argument is that Dylag himself has never come close to making it. On appeal, Dylag states that "the District Court erred allowing Teamworks, a non-signatory to the dispute resolution provision[,] to require Mr. Dylag to arbitrate his employment discrimination claims." But Dylag never attempts to explain how the district court's estoppel analysis was wrong, much less to argue a competing theory of equitable estoppel. Indeed, he does not discuss whatsoever whether (as the district court held) his allegations against Teamworks are so "intertwined" with those against WLVSC as to require arbitration. Instead, Dylag simply reiterates his primary argument that he never validly waived his right to sue his employers for discrimination or civil rights claims. He does not argue that *Ragone* is the wrong standard to apply, but rather

2

that *Ragone* is distinguishable specifically because (unlike here) it involved a *valid* waiver of civil rights claims. That is an issue which has nothing to do with the district court's estoppel analysis, and indeed an argument the majority in fact rejects with respect to Dylag's claims against Teamworks. Mem. at 2–3.

The same was true in the district court. There, the court directly asked Dylag's attorney, "[W]hy aren't the claims intertwined . . . such that he should be estopped from denying arbitration?" Dylag's attorney responded, "The claims *would be intertwined if we're not dealing with an employment discrimination case.* But you have case law here that says these federal civil rights are important. . . . [Y]ou have to make sure certain things are done [to waive them]." In other words, Dylag essentially *conceded* that the district court's general understanding of equitable estoppel was correct and that the doctrine *would* apply to his case, if he raised non-discrimination claims. He once again simply reiterated his primary argument that he did not knowingly waive his discrimination claims in the arbitration agreement, and thus even if the claims were intertwined with those against WLVSC, he could not be required to arbitrate them.

In its response brief on appeal, Teamworks first noted that Dylag "completely fail[ed]" to make any argument regarding the court's estoppel analysis, and then explained why it believes the district court's application of

estoppel was indeed correct. Yet Dylag did not even bother to file a reply brief to respond to these arguments. In all, Dylag has not at any point attempted to grapple with the district court's analysis of the third-party arbitration issue or the issue of estoppel.

The majority agrees that Dylag's arguments with respect to the arbitrability of employment discrimination claims are meritless. Mem. at 2–3. Because these are the only arguments Dylag has ever raised to contest arbitration of his claims against *both* WLVSC and Teamworks, our analysis should end there. The majority's suggestion that the district court generally misinterpreted equitable estoppel law and misapplied the test for arbitration of "intertwined" claims against a non-signatory is simply not reflected anywhere in Dylag's own arguments. Regardless of the merits of that analysis, it is not an issue we should reach. Dylag utterly failed to analyze or to argue the law underlying the district court's determination that Teamworks can enforce arbitration through estoppel, and he has not made any argument remotely resembling that adopted by the majority. He therefore has waived any such argument, and we should not build a new case for him. *See, e.g.*, *Barnes v. FAA*, 865 F.3d 1266, 1271 n.3 (9th Cir. 2017) (arguments not raised in opening brief are waived); *SeaView Trading, LLC v. Comm'r of Internal Revenue*, 858 F.3d 1281, 1288 (9th Cir. 2017) (same); *McKay v. Ingleson*,

4

558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived.").

II

Further, even if we were to consider the merits of the district court's estoppel analysis, I cannot agree that Nevada would *not* adopt the *Ragone* standard, as applied by the district court.

The majority confidently predicts that, "like most jurisdictions that apply [the equitable estoppel] framework, Nevada would require that the allegations of interdependent and concerted misconduct be founded in or intimately connected with the obligations of the underlying agreement." Mem. at 5 (internal quotation marks omitted). The problem, of course, is that Nevada itself has not said anything of the sort. And although the majority only cites cases *supporting* its more restrictive framework, it does not even mention those that do not—most notably, of course, *Ragone* itself.

Under the more lenient *Ragone* standard, a plaintiff may be forced to arbitrate claims raised against a non-signatory where such claims are "factually intertwined with" a dispute against a signatory, and where there is a close relationship between the signatory and non-signatory defendants. *See Ragone*, 595 F.3d at 127–28. There is little doubt that the district court was correct that the

5

claims against Teamworks satisfy such standard. Indeed, *Ragone* itself and many cases applying it have required plaintiffs to arbitrate claims against third parties in circumstances remarkably similar to this case. *See, e.g.*, *id.*; *Barreto v. JEC II, LLC*, 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017); *Colon v. Conchetta, Inc.*, 2017 WL 2572517, at *6 (E.D. Pa. June 14, 2017); *Bonner v. Mich. Logistics Inc.*, 250 F. Supp. 3d 388, 398–99 (D. Ariz. 2017).

The majority clearly disagrees with the *Ragone* standard. However, that standard is not such a minority view, or so obviously disfavored, as to make it clear that Nevada would disagree as well. Furthermore, the parties have not even had the opportunity to brief which standard Nevada courts would or should apply (again, because Dylag himself never challenged this issue). Because the applicable standard may be critical to the outcome of this case, I do not believe that we should decide such issue without at least full briefing from the parties or, perhaps, certification to the Nevada Supreme Court itself.

For the foregoing reasons, I respectfully dissent from Part 2.