(text box: 1) NO. 5-03-0805

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

JOANN MELENA, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jefferson County.

)

v. )  No. 03-L-38

)

ANHEUSER-BUSCH, INC., )  Honorable 

)  George W. Timberlake,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

In May 2003, the plaintiff, JoAnn Melena, filed a complaint, alleging that her employer, the defendant, Anheuser-Busch, Inc., had terminated her employment in retaliation for a claim she had filed pursuant to the Workers' Compensation Act (820 ILCS 305/1 
et seq.
 (West 2002)).  The defendant appeals an order denying its motion to dismiss her claim and compel arbitration or, in the alternative, to stay the proceedings and compel arbitration.  We find that the arbitration agreement violates the public policy of this state by purporting to remove a retaliatory discharge claim from judicial consideration without the employee's knowing and voluntary consent.  We therefore affirm the trial court's order and remand for further proceedings.

In February 1999, the plaintiff began working for the defendant as a nonunion hourly employee in its promotional products group distribution center in Mt. Vernon, Illinois.  The defendant subsequently instituted a new dispute resolution policy, which included an arbitration provision.  In February 2000, the defendant mailed materials to employees, including the plaintiff, informing them of the new policy.  A representative of the defendant's human resources department gave a presentation at the promotional products group distribution center, and posters explaining the program were displayed in the building.  Employee handbooks including the dispute resolution program were not distributed until April 2001, however.  On April 27, 2001, the plaintiff signed an acknowledgment form included in the April 2001 employee handbook.

On September 11, 2002, the plaintiff suffered a work-related injury.  On that date or shortly thereafter, she filed a claim for workers' compensation with the Illinois Industrial Commission and began receiving temporary total disability benefits.  On March 23, 2003, while the plaintiff was receiving temporary total disability benefits, the defendant terminated her employment.

On May 8, 2003, the plaintiff filed the instant complaint, alleging retaliatory discharge.  See 820 ILCS 305/4(h) (West 2002).  On June 27, 2003, the defendant filed a motion to dismiss and compel arbitration or, in the alternative, to stay the proceedings and compel arbitration.  On November 24, 2003, the court heard arguments on the motion, which it denied by a docket entry the following day.  On December 18, 2003, the court entered a written order summarily denying the defendant's motion.  On December 23, 2003, the defendant filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).

The defendant contends that the only issue before this court is whether there was an agreement to arbitrate and whether the parties' dispute falls within the scope of that arbitration agreement.  See 
Travis v. American Manufacturers Mutual Insurance Co.
, 335 Ill. App. 3d 1171, 1175, 782 N.E.2d 322, 325 (2002).  The plaintiff, however, argues that the agreement was unenforceable because (1) agreements to arbitrate claims for retaliatory discharge violate Illinois public policy (see
 Midgett v. Sackett-Chicago, Inc.
, 105 Ill. 2d 143, 150-51, 473 N.E.2d 1280, 1284 (1984)), (2) the employee handbook containing the defendant's dispute resolution policy expressly stated that it was not a contract, and (3) the agreement was not supported by consideration because the plaintiff had already worked for the defendant for more than a year when the dispute resolution policy went into effect.

The defendant urges us to disregard the plaintiff's arguments because she did not raise them before the trial court.  The record on appeal does not contain either a transcript of the hearing on the defendant's motion to dismiss or a bystander's report of those proceedings, which the defendant had the option of including pursuant to Illinois Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)).  Thus, we do not know what arguments were made to the trial court or what the judge considered in ruling on the motion.  However, we may affirm the trial court on any basis appearing in the record.  
In re Marriage of T.H.
, 255 Ill. App. 3d 247, 259, 626 N.E.2d 403, 411 (1993).  The record in this case supports the trial court's decision.

Midgett
, cited by the plaintiff, was a consolidated appeal involving employees covered by collective bargaining agreements containing arbitration clauses.  The defendant employers argued that the statutory remedy for retaliatory discharge applied only to at-will employees who otherwise would have no redress because they did not have grievance procedures under a collective bargaining agreement to protect them.  Thus, the employers contended, their discharged employees were limited to the grievance procedures available under their respective collective bargaining agreements.  
Midgett
, 105 Ill. 2d at 149, 473 N.E.2d at 1283.  In rejecting this contention, the Illinois Supreme Court emphasized the importance of Illinois's strong public policy interest in protecting the rights afforded employees by the Workers' Compensation Act by deterring retaliatory discharges.  
Midgett
, 105 Ill. 2d at 150, 473 N.E.2d at 1284.  More than " 'purely private interests' " are at stake in cases involving those claims.  
Midgett
, 105 Ill. 2d at 151, 473 N.E.2d at 1284 (quoting 
Midgett v. Sackett-Chicago, Inc.
, 118 Ill. App. 3d 7, 9, 454 N.E.2d 1092, 1094 (1983)).  The court pointed out that under the collective bargaining agreements at issue there, the remedies available to the employees would be limited to reinstatement and back pay.  
Midgett
, 105 Ill. 2d at 150, 473 N.E.2d at 1284.  The court then explained, "If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of this State."  
Midgett
, 105 Ill. 2d at 150, 473 N.E.2d at 1284.

The defendant employers in 
Midgett
 argued, much as the defendant does here, that a federal policy favoring arbitration as a means of resolving labor disputes required the court to find that the grievance procedure was the exclusive means of redressing the employees' retaliatory discharge claims.  
Midgett
, 105 Ill. 2d at 151, 473 N.E.2d at 1284.  The court rejected this argument, noting that the United States Supreme Court had repeatedly ruled that union members were not bound by the arbitration provisions in their collective bargaining agreements when their claims were based on allegations of statutory violations by their employers.  
Midgett
, 105 Ill. 2d at 151-52, 473 N.E.2d at 1284 (citing 
McDonald v. City of West Branch
, 466 U.S. 284, 80 L. Ed. 2d 302, 104 S. Ct. 1799 (1984), 
Barrentine v. Arkansas-Best Freight System, Inc.
, 450 U.S. 728, 67 L. Ed. 2d 641, 101 S. Ct. 1437 (1981), and 
Alexander v. Gardner-Denver Co.
, 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974)).

The primary concern raised by the 
Midgett
 court is not implicated here.  The defendant's dispute resolution policy expressly authorizes the arbitrator to award any remedy that would be available in a court of law.  Presumably, that would include punitive damages.  This leaves us to consider whether the strong public policy in favor of enforcing retaliatory discharge claims under the Workers' Compensation Act, standing alone, is sufficient grounds to find the arbitration agreement at issue unenforceable, at least under the circumstances presented.

The 
Midgett
 court, as noted, pointed to federal cases holding that a federal policy favoring arbitration in labor disputes was outweighed by the federal policy in favor of the judicial enforcement of statutory rights.  At the time 
Midgett
 was decided, courts were reluctant to extend this favor for arbitration beyond the collective bargaining context to nonunion employment settings.  See 
Cole v. Burns International Security Services
, 105 F.3d 1465, 1475 (D.C. Cir. 1997).  Although all the cases cited by the 
Midgett
 court are still good law, the notion that statutory rights cannot be arbitrated because arbitration is an inadequate forum for their vindication has, to a great extent, been eroded by the more favorable view of arbitration that has evolved under more recent cases.  
Gilmer v. Interstate/Johnson Lane Corp.
, 500 U.S. 20, 34 n.5, 114 L. Ed. 2d 26, 42 n.5, 111 S. Ct. 1647, 1656 n.5 (1991) (citing 
Shearson/American Express, Inc. v. McMahon
, 482 U.S. 220, 231-32, 96 L. Ed. 2d 185, 197, 107 S. Ct. 2332, 2340 (1987), and 
Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.
, 473 U.S. 614, 626-27, 87 L. Ed. 2d 444, 455, 105 S. Ct. 3346, 3354 (1985)).   Like federal courts, the courts of Illinois have a strong policy favoring the enforcement of arbitration agreements.  See 
Acme-Wiley Holdings, Inc. v. Buck
, 343 Ill. App. 3d 1098, 1103, 799 N.E.2d 337, 341 (2003).  We must therefore determine whether, in light of this shift, the Illinois Supreme Court's holding in 
Midgett
 precludes the enforcement of the arbitration agreement under the circumstances presented.  Because no Illinois courts have addressed the precise issue with which we are faced, we look to federal decisions for guidance.  Our review of relevant federal cases demonstrates that courts have continued to weigh the competing policies of providing a public forum to enforce statutory rights and enforcing arbitration agreements in determining when employers may require employees to prospectively agree to arbitrate statutory claims.  

The Ninth Circuit Court of Appeals addressed the issue in 
Prudential Insurance Co. of America v. Lai
, 42 F.3d 1299 (9th Cir. 1994).  The court explained: "The issue *** is not whether employees may ever agree to arbitrate statutory employment claims; they can.  The issue here is whether these particular employees entered into such a binding arbitration agreement ***."  
Lai
, 42 F.3d at 1303.  There, the plaintiffs were required, as a condition of their employment, to sign a document called a "U-4 form".  The form contained a provision requiring them to arbitrate any claim or dispute required to be arbitrated under the rules of the organizations with which they register.  The plaintiffs registered with the National Association of Securities Dealers as a part of their employment.  That organization requires that registered dealers submit disputes " 'arising in connection with the business' " of its members to arbitration.  
Lai
, 42 F.3d at 1301.  They later filed complaints alleging sexual harassment and employment discrimination in violation of provisions of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e 
et seq.
 (1988)).  The Ninth Circuit found that the policy of protecting employees through the enforcement of these statutes is "at least as strong as our public policy in favor of arbitration."  
Lai
, 42 F.3d at 1305.  Although the arbitration of statutory claims is not deemed to be a waiver of the substantive rights afforded by the relevant statutes, "[the] procedural protections available in the arbitral forum can differ significantly from those contemplated by the legislature."  
Lai
, 42 F.3d at 1305.  In light of this, the court found that prospective agreements to arbitrate statutory employment claims must be entered into knowingly in order to be enforceable.  
Lai
, 42 F.3d at 1304.  The court found that the employees involved did not knowingly agree to arbitrate their discrimination claims, and the court therefore found the agreement unenforceable.

In 
Nelson v. Cyprus Bagdad Copper Corp.
, 119 F.3d 756, 761 (9th Cir. 1997), the Ninth Circuit applied the "knowing agreement" standard of 
Lai
 to claims under the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 
et seq.
 (1994)).  In addition to the requirement that an agreement to arbitrate statutory claims be entered into knowingly, the court held that such an agreement must be entered into explicitly, not merely by continuing employment.  
Nelson
, 119 F.3d at 762.  The 
Nelson
 court pointed out that an arbitration agreement constitutes a waiver of the right to choose a judicial forum to vindicate an employee's statutory rights.  
Nelson
, 119 F.3d at 761 n.8; see also 
Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
, 170 F.3d 1, 18 (1st Cir. 1999).  Because the court found that the employee did not knowingly waive that right under the facts before it, it did not address whether an agreement to arbitrate statutory claims must be voluntary as well as knowing.  However, the court took the time to note in 
dicta
 that the waiver of a judicial forum "may have to be both 'voluntary and knowing' ".  
Nelson
, 119 F.3d at 761 n.10; see also 
Rosenberg
, 170 F.3d at 18 (citing 
Gardner-Denver Co.
, 415 U.S. at 52 n.15, 39 L. Ed. 2d at 160 n.15, 94 S. Ct. at 1021 n.15).

The Seventh Circuit, the federal circuit that includes Illinois, has considered the Ninth Circuit's jurisprudence in this area but has left open the question of whether an agreement to arbitrate statutory claims must be entered into knowingly and voluntarily in order to be enforceable.  We first note that a knowing-and-voluntary standard would be consistent with the Seventh Circuit's prior decision in 
Pryner v. Tractor Supply Co.
, 109 F.3d 354 (7th Cir. 1997), although that case did not discuss the Ninth Circuit's knowing-waiver cases and did not couch its holding in terms of knowing and voluntary consent.  There, the court held that a union could not consent to the binding arbitration of statutory claims for an employee; the employee had to consent to the agreement personally.  In reaching this conclusion, the court stated: "We are not holding that workers' statutory rights are never arbitrable.  They are arbitrable 
if the worker consents to have them arbitrated.
"  (Emphasis added.)  
Pryner
, 109 F.3d at 363; see also 
Penn v. Ryan's Family Steakhouses, Inc.
, 95 F. Supp. 2d 940, 950 n.9 (N.D. Ind. 2000) (noting that the 
Pryner
 court's concerns about employee consent are even stronger in the context of individual employees who, unlike those represented by unions, have "
no
 representation or voice in the [a]greement which binds them to arbitration" (emphasis in original)), 
aff'd on other grounds
, 
Penn v. Ryan's Family Steak Houses, Inc.
, 269 F.3d 753 (7th Cir. 2001).  

The Seventh Circuit first discussed the appropriateness of adopting a knowing-and-voluntary-consent standard in 
Gibson v. Neighborhood Health Clinics, Inc.
, 121 F.3d 1126 (7th Cir. 1997).  The 
Gibson
 court found an agreement to arbitrate entered into under circumstances similar to those before us unenforceable for a lack of consideration because the agreement did not bind the employer to arbitrate claims or do anything at all in exchange for the employee's promise to arbitrate her claims.  
Gibson
, 121 F.3d at 1131.  Because of this ruling, the court found it unnecessary to resolve the question of whether a consent to arbitrate statutory claims must be knowing and voluntary.  Nevertheless, the court went out of its way to "stress the advantage of arbitration agreements that are the product of an employee's 
knowing and voluntary consent
".  (Emphasis added.)  
Gibson
, 121 F.3d at 1130.  In a concurring opinion, Judge Cudahy wrote that the majority should have addressed the requirements for a knowing and voluntary consent to arbitrate.  
Gibson
, 121 F.3d at 1133 (Cudahy, J., concurring).

The Seventh Circuit again addressed the knowing-and-voluntary-consent standard in 
Penn
.  Again, the court found it unnecessary to resolve the issue, instead finding the arbitration agreement at issue unenforceable for a lack of consideration.  
Penn
, 269 F.3d at 759-60.  This time, however, the court noted that a recent statement by the United States Supreme Court led it to question the continuing validity of the knowing-and-voluntary-consent standard.  
Penn
, 269 F.3d at 761 (" 'We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context' " (quoting 
Circuit City Stores, Inc. v. Adams
, 532 U.S. 105, 123, 149 L. Ed. 2d 234, 252, 121 S. Ct. 1302, 1313 (2001))).  Even in the face of the Supreme Court's comment in 
Adams
, the concurring judge in 
Penn
 argued that the arbitration agreement at issue was "an unfair situation from its inception" because the plaintiff's acquiescence to the agreement as a part of the application process for a job as a waiter was clearly neither knowing nor voluntary.  
Penn
, 269 F.3d at 761 (H. Wood, J., concurring).

We find the Ninth Circuit's knowing-waiver analysis persuasive.  We acknowledge that this approach has not garnered universal support.  Although the First and Seventh Circuits have endorsed the Ninth Circuit's approach without adopting it (
Bercovitch v. Baldwin School, Inc.
, 133 F.3d 141, 143 (1st Cir. 1998) (holding that a plaintiff could be compelled to arbitrate statutory claims "where the plaintiff had 
voluntarily
 signed an agreement requiring arbitration" (emphasis added)); 
Gibson
, 121 F.3d at 1130), the Third and Eighth Circuit Courts of Appeals have both expressly rejected it (
Seus v. John Nuveen & Co.
, 146 F.3d 175, 183-84 (3d Cir. 1998); 
Patterson v. Tenet Healthcare, Inc.
, 113 F.3d 832, 838 (8th Cir. 1997)).  As noted, the Seventh Circuit, which appeared to favor the approach, now questions its continued viability in the face of 
Adams
.  We read less into the Supreme Court's statement in its 5 to 4 decision in 
Adams
 than does the Seventh Circuit, however.  Although the Court addressed a factual scenario quite similar to the one before us, it never addressed the issue of consent.  The Court addressed only the narrow issue of whether arbitration clauses contained in employment contracts were exempted from the provisions of the Federal Arbitration Act by section 1 of that act (9 U.S.C. §1 (1994) (excluding employment contracts of "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce")).  
Adams
, 532 U.S. at 109, 149 L. Ed. 2d at 243, 121 S. Ct. at 1306; see also 
Young v. Ferrellgas, L.P.
, 106 Wash. App. 524, 528 n.2, 21 P.3d 334, 335 n.2 (2001) (also distinguishing 
Adams
 on this basis). 

To the extent that 
Adams
 is relevant at all, we do not believe that our holding conflicts with the Court's observation that arbitration is no less desirable in the employment context than in any other context.  Indeed, there are both benefits and drawbacks to using arbitration as a dispute resolution method.  We find that allowing the employee to weigh the benefits and drawbacks of arbitration prior to deciding whether to arbitrate a claim best protects the employee's statutory rights and does not conflict with our policy favoring arbitration.  See 
Armendariz v. Foundation Health Psychcare Services, Inc.
, 24 Cal. 4th 83, 103 n.8, 6 P.3d 669, 682  n.8, 99 Cal. Rptr. 2d 745, 759 n.8 (2000) (noting that where employees knowingly and voluntarily decide to arbitrate disputes after they arise, "employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights").  Agreements to arbitrate–when they really are 
agreements
–remain enforceable. 

Furthermore, 
we find support for our holding in the Court's unanimous opinion in 
Wright v. Universal Maritime Service Corp.
, 525 U.S. 70, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998).  There, the Court held that statutory claims are not subject to a presumption of arbitrability and that any requirement to arbitrate such claims contained in a collective bargaining agreement "must be particularly clear".  
Wright
, 525 U.S. at 79, 142 L. Ed. 2d at 371, 119 S. Ct. at 396.  The Court acknowledged the tension that exists between cases such as 
Gardner-Denver Co.
 and 
Gilmer
, but by relying on both lines of cases, the Court appeared to reaffirm that both lines of cases are still the law.  
Wright
, 525 U.S. at 76-77, 142 L. Ed. 2d at 369, 119 S. Ct. at 395.  Significantly, the Court treated an arbitration clause encompassing statutory causes of action as a "
waiver
 of employees' statutory right to a judicial forum".  (Emphasis added.)  
Wright
, 525 U.S. at 80, 142 L. Ed. 2d at 371, 119 S. Ct. at 396.  The Court found that, even in the wake of 
Gilmer
, this 
right
 merits some protection.  This language tends to support a requirement of knowing and voluntary consent.  See 
Rosenberg
, 170 F.3d at 18.

We now turn to the facts before us to determine whether the plaintiff knowingly and voluntarily agreed to the defendant's dispute resolution policy.  The record leaves some question regarding whether the plaintiff entered into the agreement knowingly.  There is nothing in the record to indicate what was said at the presentation explaining the dispute resolution program or what was included in the posters displayed at the plaintiff's workplace.  Although the dispute resolution program statement and guide do explicitly state that statutory claims such as the plaintiff's are covered claims subject to binding arbitration, nothing in the record indicates when these two booklets were mailed to the plaintiff.  The letter mailed to employees prior to the April 2000 effective date of the dispute resolution program indicates that the final level of the program is binding arbitration, but it does not expressly state that agreeing to the program means giving up a judicial forum for statutory claims.  See 
Lai
, 42 F.3d at 1305 (noting that "even assuming that appellants were aware of the nature of the U-4 form, they could not have understood that in signing it, they were agreeing to arbitrate sexual discrimination suits", because the form did not describe the specific types of disputes subject to arbitration under the agreement).  We need not remand this cause for further fact-finding in this regard, however, because we conclude that even if the plaintiff entered into the agreement knowingly, she did not do so voluntarily.

We have serious reservations regarding whether an agreement to arbitrate offered as a condition of employment is ever voluntary.  See 
Gibson
, 121 F.3d at 1132 (Cudahy, J., concurring) (explaining that "we are dealing in most cases with a contract of adhesion: agree to arbitrate or lose your job"); 
Cole
, 105 F.3d at 1472-73 (contrasting an arbitration agreement imposed as a condition of employment with an "
ad hoc
, mutually voluntary decision" to use arbitration once a dispute has arisen).  When a job applicant is presented with an arbitration agreement as a condition of employment, the prospective employee is faced with a choice between accepting the arbitration agreement or continuing to search for a position that does not include such a requirement.  That is a troubling enough scenario in its own right, but in the instant case, the plaintiff had even less volition in the matter than the typical job applicant.  Her "choices" were to continue her employment, thereby automatically agreeing to the dispute resolution policy, or resign.  Counsel for the defendant admitted at oral argument that the plaintiff would have been terminated had she refused to accept the policy.  This left her with no viable options.  Unlike a job applicant, the plaintiff had not already begun a job search.  She therefore did not have the benefit of having any other job leads, nor did she have the ability to wait for a firm offer of employment before resigning, an advantage many job applicants have.  Moreover, being forced from her position with the defendant by refusing to agree to the dispute resolution likely would have made it quite difficult for her to obtain a new job.  Prospective employers might be disinclined to hire someone who was terminated for refusing to agree to an arbitration clause.  See 
Penn
, 269 F.3d at 761 (H. Wood, J., concurring) ("In Ryan's eyes, Penn would look like a troublemaker [if he questioned his interviewer about the arbitration agreement].  If he wanted the waiter's job, he would be trapped in an unfair situation until a court could unravel it").

Given the economic realities facing the plaintiff, we find that any so-called "choice" she had in the matter was illusory.  To hold that she agreed to arbitrate her retaliatory discharge claim voluntarily would defy reason.  It would also endorse an employment practice that is grossly unfair.  We do not hold that employers and employees may never prospectively agree to arbitrate statutory claims.  Where, for example, a highly skilled employee is genuinely in a position to negotiate the terms of an employment contract that contains an arbitration agreement, we might find that the employee's consent was knowing and voluntary.  However, where an employee is told to "agree" to arbitrate statutory claims or be fired, any agreement so obtained is not voluntary and violates the public policy of this state.  

We conclude that the "agreement" here at issue was not knowing and voluntary and is thus unenforceable.  We therefore affirm the order of the trial court denying the defendant's motion to compel arbitration, and we remand to the trial court for further proceedings.  

Affirmed; cause remanded.

DONOVAN and HOPKINS, JJ., concur.

                                      NO. 5-03-0805

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

JOANN MELENA, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jefferson County.

)

v. )  No. 03-L-38

)

ANHEUSER-BUSCH, INC., )  Honorable 

)  George W. Timberlake,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: September 22, 2004

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, P.J.

Honorable James K. Donovan, J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Lisa K. Franke, Dede K. Zupanci, Burroughs, Hepler, Broom, MacDonald, Hebrank

for
 & True, LLP, 103 W. Vandalia Street, Suite 300, P.O. Box 510, Edwardsville, IL 

Appellant
 62025-0510

___________________________________________________________________________________

Attorney
 Gary L. Bement, Bement & Stubblefield, P.C., 28 Bronze Pointe, P.O. Box 23926,

for
 Belleville, IL 62226

Appellee
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/22/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.