In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3584

RAJESH GUPTA,

*Plaintiff-Appellant,*

*v.*

MORGAN STANLEY
SMITH BARNEY, LLC, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 8375 — **Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 17, 2019 — DECIDED AUGUST 19, 2019

Before SYKES, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* This appeal presents a question of
contract formation. After Rajesh Gupta sued his former em-
ployer Morgan Stanley for discrimination, retaliation, and

defamation, the company moved to compel arbitration.[1] Morgan Stanley contends Gupta agreed to arbitrate these claims after he did not opt out of the company's arbitration agreement. Gupta responds that during his employment he neither saw an arbitration offer nor agreed to arbitrate employment-related disputes. The district court sided with Morgan Stanley and sent the parties off to arbitration. Gupta appeals this ruling, and we affirm.

## I

Morgan Stanley hired Gupta as a financial advisor in 2013. Upon joining the company, Gupta signed an employment agreement containing an arbitration clause "agree[ing] to arbitrate any dispute, claim, or controversy that may arise between you and Morgan Stanley … that is required to be arbitrated … pursuant to any arbitration agreement to which you are a party." That agreement also contained a merger clause providing:

> All terms and conditions of your employment with Morgan Stanley are contained in this Agreement and other written agreements between you and Morgan Stanley, and the policies and procedures of the Firm … This writing constitutes the entire agreement of the parties with respect to the subject matter recited in this Agreement. This Agreement may be amended only by a writing signed by both you and Morgan Stanley.

---

[1] Gupta sued Morgan Stanley Smith Barney, LLC and Morgan Stanley Smith Barney Notes Holdings, FA, which we refer to collectively as "Morgan Stanley" or "the company."

Among the additional terms and conditions, Morgan Stanley administered an employee dispute resolution program called "CARE," an acronym for "Convenient Access to Resolutions for Employees." CARE applied to all U.S. employees of Morgan Stanley, and the company posted a "CARE guidebook" explaining the program on its intranet site for employee access.

When Gupta joined Morgan Stanley, the CARE program did not require employees to arbitrate employment discrimination claims. But it did specify that the program's terms "may change or be discontinued," and that any such changes would be "announced in advance" before becoming "equally binding upon [the employee] and the Firm." That change came in 2015, when Morgan Stanley amended its CARE program to compel mandatory arbitration for all employment-related disputes, including discrimination claims. To announce the amended program, Morgan Stanley sent an email to the account of each of its employees in the U.S.

Morgan Stanley emailed Gupta the new arbitration agreement on September 2, 2015. The email's subject line read "Expansion of CARE Arbitration Program," and the email itself explained that, effective October 2, 2015, "final and binding arbitration" under the new "CARE arbitration program" would be "mandatory for all employees" unless an employee individually elected to opt out. The email included links to the new arbitration agreement and Morgan Stanley's revised CARE guidebook, and it encouraged employees to "read and understand" both documents because "they describe the terms, features and details of this program." The revised CARE guidebook similarly explained that "employment discrimination claims under … any federal … law (including

claims of harassment and retaliation under those laws) will be resolved by final and binding arbitration."

The final section of the company's September 2 email to Gupta, entitled "Next Steps," attached a link to the arbitration agreement opt-out form, explained instructions for submitting that form, and again notified that Gupta had until October 2, 2015, to decline. The email twice cautioned that, if the employee did not opt out, continued employment would reflect that the employee "consented and agreed to the terms" of the arbitration agreement and CARE guidebook. The email concluded with an assurance that opting out of the arbitration agreement would not adversely affect Gupta's employment status. The one page opt-out form attached to the email prominently placed the opt-out deadline in bold capital letters, allowed for submission by email, and provided directions if Morgan Stanley failed to confirm the employee's rejection of mandatory arbitration.

Over the next thirty days, Gupta had access via links on the September 2 email to the arbitration agreement, CARE guidebook, and arbitration opt-out form. During this period, Morgan Stanley also maintained on its intranet page (accessible by all Morgan Stanley employees) a reminder notification about the upcoming expansion to mandatory arbitration and the deadline to opt out. The reminder encouraged employees to "carefully review the September 2 email from Human Resources" and once more instructed that, unless they chose to opt out, continued employment would bind them to the terms of the new arbitration agreement.

The October 2015 deadline to opt out came and went. Gupta did not submit an opt-out form, respond to the September 2 email, or otherwise communicate with human

resources about the mandatory arbitration program. He continued to work at Morgan Stanley for two more years until, he alleges, the company forced him to resign because of imminent military leave.[2] Gupta sued Morgan Stanley for discrimination and retaliation in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301–35, and a related defamation claim.

Morgan Stanley moved to compel arbitration under the terms of the 2015 CARE arbitration program and agreement. Gupta resisted, asserting he never agreed to arbitrate. He said he first saw the September 2 email and arbitration agreement when Morgan Stanley filed its motion to compel and filed a declaration to that effect.[3]

The district court deferred ruling on Morgan Stanley's motion to compel "pending a trial regarding whether an agreement to arbitrate exists." The court agreed with Morgan Stanley that Illinois law permits an offeror to construe silence as acceptance if circumstances make it reasonable to do so.

---

[2] In addition to working as a financial advisor, Gupta is a member of the Navy's Judge Advocate General Corps reserves. He alleges Morgan Stanley "effectively terminated" him after he notified the company that he had been called for six months active duty. Morgan Stanley counters that Gupta resigned after the company notified him of an internal investigation into his alleged corporate policy violations; according to Morgan Stanley, Gupta recommended insurance products outside of Morgan Stanley without prior notice or approval. Gupta's appeal is limited to the district court's order compelling arbitration, and neither party asks us to resolve their substantive disputes.

[3] Gupta also declared "[a]s an attorney, I am familiar with arbitrations and arbitration clauses … and am cautious to avoid them. … If I had seen any email that referenced an arbitration clause, I would have reviewed it and immediately opted out of the agreement."

But it treated Gupta's sworn statement that he had "never seen" the September 2 email as a denial that he received the email, not simply a denial that he read it. At that point, the court found Morgan Stanley had not reliably demonstrated that Gupta had received the email. Because Gupta said Morgan Stanley never sent him an offer, the court reasoned, "there [was] a genuine dispute about the existence of an agreement to arbitrate." *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof."). After the parties' submitted pretrial evidence, however, Gupta could no longer dispute he received the September 2 email in his work email account. As a result, he stipulated "that the email arrived at his in-box," but he maintains he first saw the email only after this lawsuit was filed.

With Gupta's stipulation, the district court concluded no genuine dispute of material fact required a trial. The court found that Gupta's receipt of the September 2 email, combined with his continued employment and failure to opt out of mandatory arbitration, gave rise to an agreement to arbitrate. So the court granted Morgan Stanley's motion to compel arbitration and stayed the litigation. The district court certified its ruling for interlocutory appeal under 28 U.S.C. § 1292(b), which we agreed to accept.

## II

We review de novo a district court's ruling on a motion to compel arbitration. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018).

Gupta's appeal implicates the Federal Arbitration Act, which reflects "both a liberal federal policy favoring

arbitration … and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Specifically, the act mandates enforcement of valid arbitration agreements. 9 U.S.C. §§ 2, 4. Although it requires arbitration agreements to be in writing, it does not require them to be signed. *Id*. § 3; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002). The act also extends to employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001). Even still, courts cannot require a party to submit a dispute to arbitration unless he has agreed to do so. *See A.D. v. Credit One Bank*, 885 F.3d at 1060 (citations omitted); *Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (citations omitted) (holding a party seeking arbitration must present a claim that is, "on its face," governed by an arbitration clause).

Against this backdrop, we must resolve whether a valid agreement to arbitrate exists between Gupta and Morgan Stanley. If yes, we consider whether Gupta's claims fall within the scope of that agreement. We apply state-law principles of contract formation to answer these questions. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "Our role in interpreting a question of state law is to predict how the highest court of the state would answer the question." *Cannon v. Burge*, 752 F.3d 1079, 1091 (7th Cir. 2014). "In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012).

The parties agree Illinois contract law governs this lawsuit. But they dispute whether an agreement exists at all under Illinois law, which "requires only a manifestation of mutual assent on the part of two or more persons." *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS § 3 (1981)).

When, as here, a "case concerns the application of the Federal Arbitration Act," the Illinois Supreme Court has "base[d] [its] analysis upon principles of fundamental contract law" to determine the formation of an agreement. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 103, 107 (2006). The court "appl[ies] general contract doctrines" because "that approach is more faithful to the [act]." *Id*. at 107–08. Applying these principles, we start by evaluating the standard we must use under Illinois law to ascertain the parties' manifestation of mutual assent (the proverbial meeting of the minds). After that, we consider the elements of contract formation and whether they exist here to create an enforceable arbitration agreement.

*A*

Illinois courts evaluate contract formation under an objective theory. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (Illinois law) (citations omitted); *Vill. of S. Elgin v. Waste Mgmt. of Illinois, Inc.*, 810 N.E.2d 658, 670 (Ill. App. Ct. 2004) ("'Intent' refers to the objective manifestations of intent in the words of the contract and the actions of the parties … ."); *J.F. McKinney & Assocs., Ltd. v. Gen. Elec. Inv. Corp.*, 183 F.3d 619, 622 (7th Cir. 1999) ("Illinois uses an objective theory of contract … .") (citations omitted).

Judge Learned Hand famously explained the objective theory of contract: "A contract has … nothing to do with the

personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties … which ordinarily accompany and represent a known intent." *Hotchkiss v. Nat'l City Bank of New York*, 200 F. 287, 293 (S.D.N.Y. 1911), *aff'd*, *Ernst v. Mechanics' & Metals Nat. Bank of City of New York*, 201 F. 664 (2d Cir. 1912), *aff'd*, *Nat'l City Bank of New York v. Hotchkiss*, 231 U.S. 50 (1913). "Under the objective theory, intent to manifest assent in Illinois is revealed by 'outward expressions such as words and acts.'" *Sgouros*, 817 F.3d at 1034 (quoting *Bank Computer Network Corp. v. Cont'l Illinois Nat'l Bank & Tr. Co. of Chicago*, 442 N.E.2d 586, 591 (Ill. App. Ct. 1982)). "Intent … does not encompass one party's … purely subjective understandings of which the other party is unaware." *Vill. of S. Elgin*, 810 N.E.2d at 670. We evaluate these outward expressions through the lens of an objectively reasonable person. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 563 (7th Cir. 2012) (applying "objectively reasonable person" standard to determine validity of contract offer under Illinois law); *Hotchkiss*, 200 F. at 293–94 (holding acts or words must be "reasonably interpreted" as they would by "ordinary men" and that "whatever was the understanding" of the parties "is of not the slightest consequence"); *see also* Randy E. Barnett, *The Sound of Silence: Default Rules and Contractual Consent*, 78 Va. L. Rev. 821, 858 (1992) (explaining that the "objective theory of assent" holds persons to the reasonable or normal meaning that their conduct conveys to others). So the parties' objective conduct, not their subjective intent, determines whether Gupta agreed to mandatory arbitration.

Gupta contends the Illinois Supreme Court's decision in *Melena*, 847 N.E.2d 99, requires an employee to have "actual knowledge of an offer" and "a general understanding that a

binding agreement or contract has been entered into." We do not read *Melena* to create these requirements. In *Melena* the Illinois Supreme Court recognized "that state … court decisions cannot hold arbitration agreements to a standard any different or higher than those applicable to other contracts in general." *Id*. at 108. On this ground, the court rejected a "knowing and voluntary standard" because it "raise[s] arbitration agreements to an elevated status not contemplated by the [act]" and "means much more than a *general understanding* that a binding agreement or contract is being entered into." *Id*. (emphasis added) (citation and internal quotations omitted).[4]

Gupta's reliance on *Melena* rests entirely on the Illinois Supreme Court's use of the phrase "general understanding." He interprets that reference to mean contract formation is impossible if the offeree lacks a "general understanding" that a contract is being formed. He interprets "general understanding" to mean "actual knowledge." But this interpretation relies on the subjective intent of the parties, and Illinois uses an objective theory. No part of *Melena's* holding or its phrasing allows courts to consider subjective intent to evaluate the existence of a contract. Rather, *Melena* is consistent with an objective approach, emphasizing the employee's conduct—receipt of the employer's agreement, and performance consistent with the agreement's terms—not the employee's intent. 847 N.E.2d at 109.

---

[4] The Appellate Court of Illinois had held an agreement to arbitrate claims must be entered into knowingly and voluntarily to be enforceable. *Melena v. Anheuser-Busch, Inc.*, 816 N.E.2d 826, 834 (Ill. App. Ct. 2004), *rev'd*, 847 N.E.2d 99 (2006).

Because the parties' objective conduct governs our evaluation—not any one party's "general understanding" or "actual knowledge"—we consider whether an enforceable agreement exists here.

***B***

"In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena*, 847 N.E.2d at 109. Gupta does not dispute that the September 2 email qualifies as an offer, nor does he challenge that continued employment constitutes consideration.[5] Instead, Gupta argues he never accepted the offer.

Although Gupta acknowledges that Morgan Stanley delivered its arbitration offer to his work email, he argues "an employer cannot form a contract by an employee's silence simply by proving email delivery of an offer and a failure to opt out." The critical question, then, is whether Gupta's silence and inaction in the face of Morgan Stanley's September 2 email constitute acceptance of its proposed arbitration agreement.

"'[A] party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it.'" *Bauer v. Qwest Commc'ns Co., LLC*, 743 F.3d 221, 227 (7th Cir. 2014) (interpreting Illinois law) (quoting *Carlton at the Lake, Inc. v. Barber*, 928 N.E.2d 1266, 1270 (Ill. App. Ct. 2010)); *Landmark Properties, Inc.*

---

[5] Gupta's concessions on these elements are sensible. *See Melena*, 847 N.E.2d at 109 (holding that the employer's postal mailing of program-related materials to its employees constituted a valid offer and that "continued employment is sufficient consideration for the enforcement of employment agreements").

*v. Architects Int'l-Chicago*, 526 N.E.2d 603, 606 (Ill. App. Ct. 1988) (holding same). As a corollary, an offeror may construe silence as acceptance if the circumstances make it reasonable to do so. *First Nat. Bank of Chicago v. Atl. Tele-Network Co.*, 946 F.2d 516, 519 (7th Cir. 1991) (interpreting Illinois law). For example, "[s]ilence may be construed as acceptance where 'because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.'" *Bauer*, 743 F.3d at 228 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 69(1)(c) (1981)); *Ragan v. AT & T Corp.*, 824 N.E.2d 1183, 1188–89 (Ill. App. Ct. 2005) (holding plaintiffs' silence and inaction upon receipt of mailed agreement for telephone services, and their use of those services, constituted acceptance of arbitration clause within agreement); *Fineman v. Citicorp USA, Inc.*, 485 N.E.2d 591, 595 (Ill. App. Ct. 1985) (citing RESTATEMENT (SECOND) OF CONTRACTS § 69(1)(c)).

In the same vein, the relationship between parties may justify the offeror expecting a reply, and thus assuming that silence is assent to its proposal. *See* 2 *Williston on Contracts* § 6:50 (4th ed. 2007); 1 *Corbin on Contracts* § 3:18 (rev. ed. 2018) ("Often … silence coupled with … expectations engendered by a prior relationship can reasonably be understood by the offeror as an acceptance."); *see also Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 213–14 (1st Cir. 2019) (holding employee's silence operated as acceptance of employer's arbitration agreement transmitted by email); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (holding employee's failure to opt out of employer's dispute resolution agreement manifested consent to arbitration under that agreement).

The pre-2015 CARE program explicitly stated its terms were subject to change after an "announce[ment] in advance," so Gupta had to keep abreast of the company's dispute resolution policies upon announcement. Morgan Stanley emailed the arbitration policy changes to Gupta personally, granted him thirty days to review the new arbitration agreement, circulated an opt-out form, conspicuously displayed the deadline to opt out, posted a continual company intranet reminder of the new arbitration policy and opt-out date, and repeatedly informed that it would construe silence as acceptance of mandatory arbitration. All these actions bolstered the company's expectation of a response.

Gupta worked for Morgan Stanley for four years. That employment included regular email communication, and justified Morgan Stanley's expectation of a reply, and its assumption that Gupta's silence indicated his acceptance of mandatory arbitration. This case does not present an unsolicited offer-by-email from a stranger when the expectation of the offeree's response is rare, if not baseless. Instead, employment includes the understanding that employees will act with diligence in following an employer's instructions and responding to requests, whether transmitted by email or another reasonable mode of communication. Here, Gupta submits no evidence, policy, or prior course of dealings from which we can infer that Gupta was free as an employee to ignore Morgan Stanley's communications without repercussion.

Instead, Gupta argues Morgan Stanley failed to provide enough notice to trigger his response, pointing to *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546 (1st Cir. 2005). In *Campbell*, an employer sent a companywide email

announcing the implementation of a new dispute resolution policy. *Id*. at 547–48. Yet the employer's email failed to mention several crucial facts about the policy: that it contained an agreement to arbitrate and contractually binding terms; treated continued employment as an acceptance of those terms; and resulted in a waiver of an employee's access to a judicial forum. *Id*. at 547–48, 557–58. For those reasons, the court held the employer's email failed to provide "minimally sufficient notice" of a contractual modification. *Id*. at 557, 559.

But unlike in *Campbell*, Morgan Stanley's September 2 email to Gupta mentioned the new "arbitration agreement" eight times; explained that arbitration would become the exclusive forum for covered claims; informed that he was free to opt out without consequence; instructed if he did not elect to opt out that continued employment would be construed as acceptance; and, in the agreement itself, explained in bold and capitalized words that the parties were "giving up [their] right to a jury trial in any forum." Even more, Gupta attested to the clarity of Morgan Stanley's email when he declared under oath, "[a]s an attorney … [i]f I had seen [the] email that referenced an arbitration clause, I would have reviewed it and immediately opted out." Given these differences, *Campbell* does not offer Gupta a lifeline.

The conduct of Morgan Stanley and Gupta indicated mutual assent to mandatory arbitration. *See Zabinsky*, 807 N.E.2d at 671. Morgan Stanley reasonably construed Gupta's silence as acceptance of the arbitration agreement after he was given a clear offer, a reasonable opportunity to opt-out, and repeated instructions that silence and continued employment reflected acceptance. *See Ragan*, 824 N.E.2d at 1188–89 (holding silence reflected acceptance of arbitration agreement

where plaintiff "had a reasonable opportunity to reject the offer but failed to do so"); *see also Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (holding same under Illinois law). Similarly, the parties' employment relationship made it reasonable to expect Gupta would notify Morgan Stanley if he intended to decline its offer, as well as that silence would convey acceptance. *Bauer*, 743 F.3d at 228. When, as here, "inaction is indistinguishable from overt acceptance," *Najd*, 294 F.3d at 1109, we may infer the parties have agreed. For these reasons, we conclude the district court reasonably construed Gupta's silence and continued employment as assent to the arbitration agreement.

The next question is whether that agreement covers Gupta's claims for discrimination, retaliation, and defamation. It does: § 2 of the arbitration agreement expressly designates each of these charges as a "covered claim." Because Gupta's claims fall within the scope of the arbitration agreement, *NextEra Energy Point Beach, LLC*, 762 F.3d at 594, the district court did not err in compelling the parties to arbitrate those claims.

As a final line of defense, Gupta contends his employment agreement prohibits Morgan Stanley from requiring mandatory arbitration without his written consent. This argument fails to acknowledge that Gupta's employment agreement and the CARE arbitration program are separate, free-standing agreements. No version of Morgan Stanley's CARE program, before or after 2015, required a signed agreement. So unless the employment agreement incorporated the terms of the CARE arbitration program, no signature was needed to modify that program, as Gupta claims.

As we relayed earlier, Gupta's employment agreement contained a merger clause. "The presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 665 (7th Cir. 2002) (interpreting Illinois law) (citations omitted). That the parties here intended to exclude "other written agreements" and "policies and procedures of the Firm" is supported by the merger clause's proviso "*[t]his* writing constitutes the entire agreement … with respect to the subject matter recited in *this* Agreement." It also provides"*[t]his* Agreement" requires a writing signed by the parties to amend terms.

"Mere reference to another contract or document is not sufficient to incorporate its terms into a contract." *Id*. at 666. Instead, "there must be an express intent to incorporate," *id*., and there is no such expression here. A fair reading of the merger clause supports that it references "*other*" agreements and policies to "assure[] the continued vitality" of those instruments, each of which are "necessary, but self-contained" agreements in Gupta's employment relationship. *Id*. at 663, 665. Gupta's employment agreement is not susceptible to an interpretation that it incorporated the terms of the CARE arbitration program, such that any modification to the program needed Gupta's sign off.

Last, Gupta claims the parties had a "course of dealing" requiring him to initial "each and every paragraph" of any agreement between them. But the record does not support this conclusion. Gupta entered several agreements with Morgan Stanley, including for a $1.5 million loan. Yet he points to only one contract, his employment agreement, to prove a "course of dealing." Even putting this imbalance

aside, Gupta fails to acknowledge that the source of his arbitration obligation, the CARE program, specified its terms "may change or be discontinued" after an "announce[ment] in advance" before becoming "equally binding upon [the employee] and the Firm." No version of the CARE program requires employees to initial policy modifications before taking effect. So here the absence of initialing poses no problems.

The employment agreement is relevant in another key respect: its arbitration clause requires Gupta to honor any arbitration agreement with Morgan Stanley. A valid arbitration agreement exists that covers Gupta's claims, so the district court correctly compelled those claims to arbitration.

## III

Because this case meets all three requirements to compel arbitration under the Federal Arbitration Act—a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate—the district court correctly compelled arbitration, and its judgment is AFFIRMED.