In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3851

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 2150,

*Plaintiff-Appellant,*

*v.*

NEXTERA ENERGY POINT BEACH, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-00485 — **C.N. Clevert, Jr.**, *Judge.*

ARGUED JUNE 5, 2014 — DECIDED AUGUST 11, 2014

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE,
*Circuit Judges.*

KANNE, *Circuit Judge.* The plaintiff, a union operating on
behalf of certain employees at a nuclear energy facility, sued
the facility to compel arbitration after a union employee was
discharged, in his opinion, without just cause. The facility
opposed arbitration on various grounds, and was successful in
the district court. Reviewing *de novo*, we find that the dispute
between the parties falls squarely within the coverage of the

arbitration clause, and we reverse. The relief sought by the plaintiff is granted.

## I. BACKGROUND

NextEra Energy Point Beach, LLC, owns and operates the Point Beach Nuclear Power Plant, a two-unit commercial nuclear energy generating facility in Two Rivers, Wisconsin. Nuclear Registry Commission regulations governing nuclear plants require that "unescorted access" to the Point Beach facility be limited to those individuals who work within the protected area of the plant and who meet and maintain compliance with certain requirements. NextEra requires employees to maintain unescorted access privileges as a condition of their employment.

International Brotherhood of Electrical Workers Local 2150 (the "Union") is a labor organization representing employees of NextEra for collective bargaining purposes. The Union represents four bargaining units at the Point Beach facility, each of which is covered by a separate collective bargaining agreement. Those agreements are color-coded, and the "White Book" covers the dispute in this case.

Jonathan Hofstra was a full-time, union-affiliated employee at the Point Beach facility from February 2004 through February 24, 2012. On February 13, 2012, Hofstra reported to his supervisor that he had been arrested and criminally charged with operating a motor vehicle while intoxicated. NextEra revoked Hofstra's unescorted access privileges effective February 20, 2012. Because the maintenance of those privileges was a necessary condition to continued employment at the

Point Beach facility, NextEra terminated Hofstra four days later.

On April 5, 2012, the Union filed a written grievance on behalf of Hofstra alleging that he was "discharged from employment without just cause due to an inappropriate site access denial determination" in violation of certain provisions of the White Book. The Union requested that Hofstra's unescorted access privileges be restored, that his employment be reinstated, and that he be made whole. NextEra denied the grievance and refused to arbitrate. After confirming NextEra's stance, the Union filed suit in federal court to compel arbitration. The district court denied the Union's motion, and we reverse. Our jurisdiction over the case stems from the federal questions involved.

## II.   ANALYSIS

We review a district court's decision to deny or compel arbitration *de novo*. *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008). We must first determine whether the Union is making a claim that is, "on its face," governed by the White Book arbitration clause. *Id*. (citing *United Steelworkers of America v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)). In doing so, we are mindful that both the law and public policy strongly favor arbitration, *see, e.g.*, 29 U.S.C. § 173(d); *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 378–79 (1974), and that the party seeking arbitration is entitled to the benefit of the doubt. Where the arbitration clause is broad, we presume arbitrability of disputes. *AT&T Techs., Inc. v. Communc'ns Workers of America*, 475 U.S. 643, 649 (1986). And

where any ambiguity as to the scope of the clause exists, we will construe it in favor of the party seeking arbitration. *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475–76 (1989). Ultimately, we will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steel*, 531 F.3d at 535 (quoting *United Steelworkers of America v. Warrior & Gulf*, 363 U.S. 574, 582–83 (1960)).

Pursuant to those standards, we find that the Union's grievance, on its face, clearly falls within the scope of the White Book arbitration clause. That means this dispute will be arbitrable—at least to the extent it goes to Hoftsra's discharge—unless we can say otherwise with "positive assurance." NextEra has provided nothing to us that comes close to meeting that standard, and so we must reverse the decision of the district court and grant the relief the Union seeks.

### A.    Facial Arbitrability

We begin our discussion with the White Book arbitration clause. Article 16 of the White Book sets out grievance procedures. A "grievance" is defined as "any complaint or dispute … concerning the interpretation or application of [the White Book] or concerning any claim of disciplinary action or discharge taken against an employee without just cause." The Union is required to carry any grievance through a series of steps. If, after moving through the first three steps (each of which involves some level of review by NextEra), a grievance which "involves compliance with the terms and conditions of

[the White Book]" is not "satisfactorily resolved," the Union "may … submit the dispute to a Board of Arbitration."

The Union rightly notes that this language is of a type that we have referred to, in the past, as broad enough to trigger the presumption of arbitrability. *See Intern. Union of Operating Eng'rs Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 254, 257 (7th Cir. 1994) (clause required arbitration of "any dispute … concerning the interpretation or application of the terms of this contract."); *Certified Grocers of Illinois, Inc. v. Local 703*, 816 F.2d 329, 329–30 (7th Cir. 1987) (clause required the arbitration of "any difference … between the Employer and the Union concerning any interpretation or application of any of the provisions of this Agreement."). NextEra responds that the language is in fact quite narrow and does *not* trigger a presumption. At the same time, however, NextEra acknowledges that we have recently grown more reluctant to wade into the waters of a breadth-or-narrowness dispute. *See Intern. Bhd. of Elec. Workers Local 21 v. Illinois Bell Tel. Co.*, 491 F.3d 685, 688 (7th Cir. 2007). This case provides a great illustration of the basis for our reticence: The entire dispute is irrelevant. We need not rely on the "broad language presumption," here. The White Book specifically contemplates arbitration of this kind of dispute.

The grievance the Union filed on Hofstra's behalf claimed that Hofstra "was discharged from employment without just cause due to an inappropriate site access denial determination." Employee discharge is specifically listed in Article 16 as an appropriate subject for a grievance. More importantly, a "just cause" requirement and certain procedural

conditions are attached to discharge by Article 12, meaning that a grievance concerning Hofstra's discharge goes to "terms and conditions" set out in the White Book. The Article 16 arbitration clause, in turn, covers grievances related to the "terms and conditions" of the White Book. Thus, Hofstra's grievance is arbitrable "on its face." *United Steel*, 531 F.3d at 535. That means we will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

### B.    *NextEra's Arguments*

Although NextEra concedes that a disciplinary discharge is generally arbitrable, it protests arbitration of this particular dispute. First, it argues that Hofstra's was not, in fact, a disciplinary discharge, and that only disciplinary discharges are subject to arbitration. Second, NextEra argues that the Hofstra "discharge" grievance in fact goes to the unescorted access termination, which is a non-arbitrable issue, and that the entire discharge is therefore excluded from arbitration. Third, NextEra argues that other "forceful evidence" of intent exists which supports excluding this dispute from arbitration. None of NextEra's arguments holds water.

### 1.    *"Disciplinary Discharge"*

NextEra attempts to bring Hofstra's discharge out from under the plain language of the arbitration clause by asserting that it was not a "disciplinary" discharge. Instead, according to NextEra, it was a discharge for failing to meet the terms and conditions of Hofstra's employment, because his conduct was such that his unescorted access had to be revoked. But a

discharge for failing to meet the terms and conditions of employment *is* a disciplinary discharge, according to any remotely sensible understanding of that term. Thus, even if NextEra is correct to read the arbitration clause to cover only "disciplinary" discharges, this one would qualify. NextEra's first theory is therefore a non-starter.

### 2. *Reclassifying the Grievance*

NextEra's second argument focuses on the fact that an arbitrator's consideration of whether or not Hofstra was discharged with just cause will necessarily hinge on the propriety of the unescorted access termination, a management decision which NextEra believes is not arbitrable. NextEra relies on our decision in *Intern. Ass'n of Machinists Lodge No. 1777 v. Fansteel, Inc.*, 900 F.2d 1005, 1011 (7th Cir. 1990), for the proposition that the court must examine the language of a grievance to determine the "true nature" of the dispute, and whether that true nature is "substantively arbitrable."

The Union admits that it does hope to gain arbitrator review of the access decision as the motivation behind Hofstra's termination. But NextEra overestimates the effect of that admission on the arbitrability of the discharge dispute as a whole. *Fansteel*'s discussion of "substantive arbitrability" goes to the rule—a common one, which we have invoked already—that a dispute which falls within the arbitration clause on its face will nevertheless be excluded if "we can say with positive assurance that the parties intended to exclude the involved dispute from arbitration." 900 F.2d at 1010–11. Pursuant to the White Book, discharge disputes fall within the arbitration clause on its face. We therefore will not preclude

arbitrator review of this grievance entirely unless we can say with positive assurance that certain *kinds* of discharges—particularly, ones based on the revocation of unescorted access privileges—are nonetheless excluded from arbitration.

NextEra has provided no evidence or legal argument which leaves us so "positively assured." This case is nothing like *Fansteel*, on the facts. There, although the subject matter of the parties' dispute was facially arbitrable, a separate written settlement agreement specifically committed the dispute to resolution in a court of law. *Id*. Predictably, we concluded that arbitration was not the method of dispute resolution to which the parties had agreed. NextEra's argument against arbitrability in this case is not based on any such express agreement. It is based on the lack thereof. The White Book does not expressly commit unescorted access decisions to either arbitration or to management's sole discretion, so NextEra argues that the matter is *implicitly* committed to management discretion by a residual authority clause in the agreement stating that "all management functions … not modified or restricted by [the White Book] are retained and invested exclusively in [NextEra]."

That argument may or may not be a good one for precluding an arbitrator from second-guessing the unescorted access decision itself. That is not for us to decide. It is certainly *not* a good argument, however, for precluding arbitration of the *discharge* decision. "[A]ny exclusion of particular parties or issues from coverage by an agreement's arbitration provisions should not be inferred from the language of the agreement, but

*must be stated explicitly in the agreement.*" *Ceres Marine Terminals, Inc. v. Intern. Longshoremen's Ass'n, Local 1969, AFL-CIO*, 683 F.2d 242, 247 (7th Cir. 1982) (emphasis added). On its face, the arbitration clause covers *any* grievance that a discharge did not meet the requirements laid out in Article 12. Without an explicit exclusion of discharges based on unescorted access revocations, we will not contravene the language of the agreement.

We note, however, that we do *not* hold that the arbitrator may, in fact, review and overturn NextEra's revocation of Hofstra's unescorted access privileges. We express no opinion on the subject. NextEra is entitled to present its arguments on that issue to the arbitrator, and the arbitrator may well find the decision unreviewable. If so, the entire matter of the propriety of the discharge might be very quickly resolved. But the potential weakness of the Union's claim on the merits is no defense to the arbitrability of this dispute, as a threshold question.

*3.  "Forceful Evidence"*

NextEra's final argument is premised on the rule that, even where an arbitration agreement covers the dispute on its face, the opposing party can avoid arbitration by presenting "forceful evidence of a purpose to exclude the claim from arbitration." *Printing Specialties and Paper Prods. Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102, 104 (7th Cir. 1987). NextEra relies on two types of evidence which it believes are "forceful": bargaining history and established practice.

*a.   Bargaining History*

NextEra believes the bargaining history between the parties shows that they agreed to exclude unescorted access decisions from arbitration. NextEra begins by noting a 2006 arbitration decision—involving different parties,[1] a different collective bargaining agreement, and different facts—in which the arbitrator concluded that access decisions were non-reviewable. That decision, of course, has no effect on anything outside of its specific, limited context:

> It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions. Indeed, an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances.

*El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores de Puerto Rico*, 961 F.2d 317, 321 (1st Cir. 1992) (citations omitted).

Nonetheless, NextEra believes that the Union's failure to push for language rebutting the 2006 arbitrator's decision—which applied only to different parties and a different agreement—in negotiations between *these* parties, for *this* agreement, shows that the Union intended the exclusion of disputes like the present one from arbitration. Furthermore, NextEra believes the Union's failure to object to its removal of a clause from an early draft of the White Book mandating that

---

[1] The Union was a party to the 2006 arbitration, but at that time the Point Beach facility was owned by Wisconsin Electric Power Company, and, obviously, Hofstra was not the employee involved.

an unescorted access revocation not be "arbitrary and capricious" demonstrates the Union's accession to NextEra's intent to remove the issue from arbitration.

There is a significant problem with all of this: None of it suggests in any way that the parties intended to remove *discharge decisions* from coverage under the arbitration clause, and the Union is asking for review of a discharge decision. Moreover, we are not persuaded that NextEra's evidence is "forceful." A party's failure to center future negotiations around a non-binding prior arbitration decision to which its negotiating partner was not even a party is relatively unremarkable, in our eyes. It is certainly not forceful evidence of an intent to exclude. As for NextEra's push to remove conditional language concerning unescorted access decisions, it is not even clear whether the Union knew of NextEra's motives, much less agreed to them.

*b.    Established Practice*

NextEra's second line of purported "forceful evidence" of a mutual intent to exclude access decisions from arbitrator review is that it developed its own "Access and Fitness Program" to monitor and ensure its employees' compliance. The program was unilaterally established, and it no more forcefully establishes a mutual intent to exclude covered material from arbitration than the fact that NextEra employed its own internal disciplinary procedures establishes a joint intent to exclude disciplinary actions from arbitration. The existence of internal review procedures and an agreement to arbitrate disputes concerning the results of those procedures are not in any way mutually exclusive. Moreover, again, does

not go to show that *discharge decisions* founded on access revocations were intentionally excluded from the facially applicable arbitration clause.

### III.   CONCLUSION

In summary, the Union's grievance falls within the scope of the arbitration clause on its face. As a result, we must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steel*, 531 F.3d at 535. We cannot say so with positive assurance in this case, either on the basis of explicit exclusion, forceful evidence of intent, or any of the other possibilities offered by NextEra. This grievance must be sent to arbitration. There, NextEra may raise many of the same defenses it used in this lawsuit, including its theory that the arbitrator may not review or overturn the unescorted access revocation undergirding Hofstra's discharge. It is not for us to determine how successful those arguments will prove to be on the merits, but we can say with certainty that they do nothing to defeat the plain language of the White Book within the context of this case. The judgment of the district court is REVERSED.