**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS SYSTEM COUNCIL U-4, Plaintiff–Appellee,**

v.

**FLORIDA POWER & LIGHT CO., Defendant–Appellant.**

**No. 15–11442**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Oct. 30, 2015.

Michael Anthony Gillman, Noah Scott Warman, Sugarman & Susskind, PA, Coral Gables, FL, for Plaintiff–Appellee.

Gary K. Harris, Boies Schiller & Flexner, LLP, Orlando, FL, David Austin, Florida Power & Light Company, Juno Beach, FL, Ellen Steingeser Malasky, Florida Power & Light Company, N. Palm Beach, FL, for Defendant–Appellant.

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

The plaintiff, a union operating on behalf of certain employees at a nuclear energy facility, filed suit against the operator of the facility to compel arbitration after the operator revoked a union employee's privileges to access the nuclear facility unescorted. As a result of having his access

privileges revoked, the employee could not continue working at the nuclear facility. The operator opposed arbitration on the ground that the dispute was not within the scope of the arbitration agreement. The district court compelled arbitration, and we affirm.

## I.

Defendant–Appellant Florida Power & Light ("FPL") operates the Turkey Point nuclear power plant. To operate a nuclear generator, FPL must comply with certain Nuclear Regulatory Commission ("NRC") regulations, which state that an individual must be "trustworthy and reliable" to be granted "unescorted access" to the nuclear facility. *See* 10 C.F.R. § 73.56. FPL has enacted policies to comply with NRC regulations.

Michael Kohl is a long-time FPL employee who worked as a nuclear watch engineer at Turkey Point. In August 2012, Kohl was arrested for "grand theft." Following his arrest, FPL revoked Kohl's "unescorted access" to the Turkey Point nuclear facility. Without unescorted-access privileges, Kohl could not continue working as a nuclear watch engineer at Turkey Point. Kohl appealed the revocation of his access privileges to FPL management, who upheld the revocation in November 2012. *See* 10 C.F.R. § 73.56(*l*) ("The procedure must provide for an impartial and independent internal management review."). Ultimately, the grand theft charges against Kohl were dismissed.

Kohl is a member of Plaintiff–Appellee International Brotherhood of Electrical Workers System Council U–4 ("IBEW"). Kohl was covered by a collective bargaining agreement between IBEW and FPL. The agreement contains a grievance and arbitration procedure. Grievances advance through a series of steps in an attempt to settle the dispute. If a grievance remains unresolved, either party may demand arbitration. Doc. 1–3, Art. IV, ¶ 27(a).

In September 2012, Kohl and IBEW filed a grievance with FPL, stating, "I Mike Kohl, request that my Nuclear Access be reinstated and I be returned to work and made whole." Doc. 1–5. After his access privileges were revoked, Kohl continued to work for FPL at a different power plant as a maintenance worker, but he earned substantially less than he did as a nuclear watch engineer.

In November 2012, FPL informed IBEW that it would "not accept a grievance because it involves a matter that is not disciplinary in nature and is not subject to grievance and arbitration procedures." Doc. 1–8. According to FPL, decisions about nuclear access are governed by NRC regulations, and FPL, "as licensee, has the sole responsibility to grant or deny unescorted access to its nuclear facilities." *Id.*

## B.

In January 2013, IBEW filed a petition in the United States District Court for the Southern District of Florida to compel arbitration of the dispute about Kohl's access rights. *See* 29 U.S.C. § 185(a). FPL answered, denying that the dispute was subject to arbitration under the collective bargaining agreement. In November 2013, FPL moved to dismiss the petition for lack of subject-matter jurisdiction. FPL asserted that the case was moot because Kohl's site-access revocation had been lifted and he was "now eligible to apply for access authorization to Turkey Point."[1]

---

1. According to FPL, because Kohl's access had been "unfavorably terminated," NRC reg-    ulations required Kohl to again apply for and

The district court granted FPL's motion and dismissed the case as moot.

On appeal, this Court vacated and remanded. *Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 580 Fed.Appx. 868 (11th Cir.2014) (hereinafter *"IBEW"*). We held that the district court erred in dismissing the case as moot because, "even if the issue of nuclear access is moot, IBEW's request that Kohl be returned to his previous job and receive back pay is not." *Id.* at 869. We remanded the action to the district court with instructions to determine only "whether FPL's determination of 'access rights' falls within the arbitration provisions of IBEW and FPL's collective bargaining agreement," such that the agreement "provides the arbitrator with authority to adjudicate this dispute." *Id.* We instructed the court not to consider "issues that go to the merits, such as whether the NRC regulations render FPL's actions unreviewable." *Id.* (citing *Int'l Bhd. Of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 596 (7th Cir.2014) (hereinafter *"NextEra Energy"*)).

On remand, the district court granted IBEW's petition to compel arbitration. According to the court, a "grievance" under the collective bargaining agreement "encompasses any conduct by FPL that takes a job benefit away from an employee, including nuclear access." Doc. 33 at 3. Finding that "FPL took away Kohl's worksite, job title, job duties and reduced his salary[,]" the court concluded that Kohl's challenge to these actions through his loss of access to Turkey Point constituted a valid and arbitrable grievance. *Id.* at 4. FPL appeals.

## II.

"We review *de novo* a district court order granting a motion to compel arbitra-

complete the unescorted access authorization

tion." *Johnson v. KeyBank Nat'l Assoc. (In re Checking Account Overdraft Litigation)*, 754 F.3d 1290, 1293 (11th Cir.2014).

## III.

We begin by summarizing the principles governing our review of an arbitration provision in a collective bargaining agreement, derived from the Supreme Court's *Steelworkers* Trilogy over fifty years ago. *See Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

First, because arbitration is simply a matter of contract and consent, *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S.Ct. 2847, 2856, 177 L.Ed.2d 567 (2010) (emphasis in original).

Second, questions of whether an arbitration agreement covers a particular dispute are generally for the courts unless the agreement expressly provides otherwise. *AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. at 1418. Thus, if an arbitration provision's applicability to the dispute is in issue, as it is here, "the court must resolve the disagreement." *Granite Rock Co.*, 561 U.S. at 299–300, 130 S.Ct. at 2858 (internal quotation marks omitted).

Third, in deciding questions of arbitrability, "a court is not to rule on the potential merits of the underlying claims." *AT*

process mandated by the NRC.

*& T Techs., Inc.,* 475 U.S. at 649, 106 S.Ct. at 1419. In this case, the previous panel identified "whether the NRC regulations render FPL's actions unreviewable" as such a merits issue. *IBEW,* 580 Fed. Appx. at 869; *see also NextEra Energy,* 762 F.3d at 596 ("[W]e do *not* hold that the arbitrator may, in fact, review and overturn NextEra's revocation of Hofstra's unescorted access privileges.... But the potential weakness of the Union's claim on the merits is no defense to the arbitrability of this dispute, as a threshold question.").

Fourth, and finally, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc.,* 475 U.S. at 650, 106 S.Ct. at 1419 (brackets and internal quotation marks omitted; alterations adopted). In short, doubts should be resolved in favor of arbitration. *Id.* The presumption of arbitrability is "particularly applicable" where an arbitration clause is broadly worded. *Id.; see NextEra Energy,* 762 F.3d at 594 ("Where the arbitration clause is broad, we presume arbitrability of disputes.").

The presumption of arbitrability "applies when an 'arbitration agreement is ambiguous about whether it covers the dispute at hand.'" *Dasher v. RBC Bank (USA),* 745 F.3d 1111, 1115 (11th Cir.), *cert. denied,* —— U.S. ——, 135 S.Ct. 144, 190 L.Ed.2d 231 (2014) (quoting *Granite Rock Co.,* 561 U.S. at 301, 130 S.Ct. at 2858). Put differently, the "federal policy favoring arbitration" does not "override[ ] the prin-ciple that a court may submit to arbitration only those disputes that the parties have agreed to submit." *Granite Rock Co.,* 561 U.S. at 302, 130 S.Ct. at 2859 (ellipsis and internal quotation marks omitted); *Inetianbor v. CashCall, Inc.,* 768 F.3d 1346, 1352–53 (11th Cir.2014), *cert. denied,* —— U.S. ——, 135 S.Ct. 1735, 191 L.Ed.2d 701 (2015).

**IV.**

The question before us is "whether FPL's determination of 'access rights' falls within the arbitration provisions of IBEW and FPL's collective bargaining agreement." *IBEW,* 580 Fed.Appx. at 869. That question, in turn, depends on the definition of "grievance" in the collective bargaining agreement, because only grievances may be advanced to arbitration. Doc. 1–3, Art. IV, ¶ 27(a). The agreement defines a "grievance" "as a violation of the terms of this Agreement or any type of supervisory conduct which unjustly denies to any employee the employee's job or any benefit arising out of the employee's job." *Id.,* ¶ 26.

FPL contends that the district court's order compelling arbitration should be reversed because the court applied the presumption of arbitrability without first determining whether the grievance and arbitrations provisions were ambiguous. And the provisions are not ambiguous, according to FPL, because the revocation of Kohl's access privileges does not fall within the plain and objective meaning of "supervisory conduct," given that David Bonthron, the FPL employee who revoked Kohl's unescorted access, was not Kohl's supervisor.[2] FPL also argues that the "robust, unequivocal public policy to

---

2. According to FPL, Bonthron was employed by FPL as the Access Authorization/Fitness for Duty Program Manager. He was responsible for ensuring FPL's compliance with the NRC's regulations regarding unescorted access privileges and related matters for all FPL executives and employees.

safeguard the Nation's nuclear facilities" is consistent with the purportedly clear conclusion that the parties did not include this particular dispute within the grievance and arbitration provisions.

### A.

We first address whether the grievance and arbitration provisions are ambiguous, so as to trigger the presumption of arbitrability. *See Dasher*, 745 F.3d at 1115. We must interpret an arbitration agreement by construing the contract to effectuate the intent of the parties, "as determined by the objective meaning of the words used." *Inetianbor*, 768 F.3d at 1353 (citation and internal quotation marks omitted). "A contract term is ambiguous if reasonably susceptible to more than one interpretation." *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir.1988).

Initially, we note that FPL makes no claim that the revocation of access privileges does not or could not "unjustly den[y] to any employee the employee's job or any benefit arising out of the employee's job." *See* Doc. 1–3, Art. IV., ¶ 26. And, because access privileges are necessary for an employee to work at a nuclear facility, we find that their revocation arguably denies the employee his job and his job benefits. For example, in this case, Kohl lost his job as a nuclear watch engineer and suffered a loss of job duties and salary because of FPL's revocation of his access rights.

Rather, FPL's challenge is limited to whether determinations of access privileges are encompassed by the phrase "any type of supervisory conduct." The collective bargaining agreement does not define the term "supervisory conduct," or, for that matter, "supervisor." FPL interprets "supervisory conduct" to exclude actions from those who, like Bonthron, exercise authority over employees in the interest of management but do not supervise employees' job duties or performance.[3] This may, in fact, be a reasonable interpretation. We do not need to decide whether it is, however, because we conclude that the grievance and arbitration provisions are reasonably susceptible to an interpretation that covers FPL's determination of access rights.[4]

In interpreting a contract, we must read the words of the contract in the context of the contract as a whole. *Inetianbor*, 768 F.3d at 1353. In this case, the context is that of a collective bargaining agreement governing relations between labor and management. "A collective bargaining agreement is an effort to erect a system of industrial self-government[,]" and "the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *Warrior & Gulf Navigation Co.*, 363 U.S. at 580–81, 80 S.Ct. at 1351–52. In essence, "[c]ollective bargaining agreements regulate or restrict the exercise of management functions." *Warrior & Gulf Navigation Co.*, 363 U.S. at 583, 80 S.Ct. at 1353.

---

3. We infer this interpretation, we think fairly, from FPL's briefing. FPL asserts that Bonthron was not Kohl's supervisor, but it never defines what it means by the term "supervisor" or attempts to provide a more comprehensive interpretation of the provision.

4. We may affirm the district court's order on any ground supported by the record, even if that ground was not relied upon by the dis-

trict court. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252–53 (11th Cir.2013). Thus, even if the district court failed to determine whether the agreement was ambiguous, as FPL contends, we nonetheless can reach and decide this question of law in the first instance. *See Peterson v. Lexington Ins. Co.*, 753 F.2d 1016, 1018 (11th Cir.1985) (contractual ambiguity is a question of law).

Viewed against this backdrop, we think it is reasonable to construe the phrase "supervisory conduct" broadly as referring to conduct under management's authority and in its interest that takes away an employee's job or job benefit, or, as the district court succinctly put it, "any conduct by FPL that takes a job benefit away from an employee" *See* 29 U.S.C. § 152(11) (defining a "supervisor" under the National Labor Relations Act as an individual who has authority "in the interest of the employer" to take or recommend certain actions with respect to employees); *cf. Beasley v. Food Fair of N. Carolina, Inc.,* 416 U.S. 653, 658–60, 94 S.Ct. 2023, 2026–27, 40 L.Ed.2d 443 (1974) (explaining that "supervisors" were excluded from collective bargaining because they were considered part of "management obliged to be loyal to their employer's interests"). The collective bargaining agreement's use of broad language to define a grievance— "*any type* of supervisory conduct"—likewise may suggest that the provision was not intended to be construed narrowly.

Whether or not Bonthron supervised Kohl's work, it is undisputed that Bonthron had authority, in the interest of FPL, to make nuclear-access determinations for FPL employees, including Kohl. *See Black's Law Dictionary* 1667 (10th ed. 2014) (defining a "supervisor" as "[o]ne having authority over others; a manager or overseer")[5]; FPL's Initial Br. at 30 (stating that Bonthron's duties were "to assist in managing" Turkey Point by making access determinations); *see also IBEW,* 580 Fed.Appx. at 869 (characterizing the issue in this appeal as *"FPL's* determination of 'access rights'" (emphasis added)). In making these determinations, FPL "monitor[ed]," "evaluat[ed]," "investigat[ed]," and "observ[ed]" employ-

ees—all terms consistent with oversight and supervision—to determine whether they are and continue to be "trustworthy and reliable" so as to comply with NRC regulations. FPL's Initial Br. at 14.

As explained above, FPL's access decisions can have significant employment consequences for employees. Thus, despite the fact that Bonthron may not have been Kohl's supervisor in a traditional sense or that access decisions do not arise out of that type of relationship, we think the phrase "any type of supervisory conduct" is reasonably susceptible of an interpretation that encompasses FPL's nuclear-access determinations.

In sum, the grievance and arbitration provisions are ambiguous because they are reasonably susceptible of an interpretation that covers FPL's determinations of access rights. *See Orkin Exterminating Co., Inc.,* 849 F.2d at 1360. Therefore, even assuming that FPL's interpretation of the grievance and arbitration provisions is also reasonable, we apply the presumption of arbitrability. *See Granite Rock Co.,* 561 U.S. at 302, 130 S.Ct. at 2858 (stating that the presumption applies where there is "a validly formed and enforceable arbitration agreement [that] is ambiguous about whether it covers the dispute at hand").

**B.**

We adhere to the presumption of arbitrability and resolve any doubts in favor of ordering arbitration unless the presumption is rebutted. *Id.,* 130 S.Ct. at 2858–59. To rebut the presumption in the face of a broadly worded arbitration provision, the party opposing arbitration generally must show either an "express provision excluding a particular grievance from arbitration" or, in its absence, "only the most

---

**5.** "To ascertain ordinary meaning, courts often turn to dictionary definitions for guid-

ance." *United States v. Lopez,* 590 F.3d 1238, 1248 (11th Cir.2009).

forceful evidence of a purpose to exclude the claim from arbitration." *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. at 1354).

Here, FPL points to no express exclusion in the collective bargaining agreement. The agreement does not expressly commit unescorted-access decisions either to arbitration or to management's sole discretion. FPL suggests that we can infer a purpose to exclude access decisions based on the "strong public policy to safeguard nuclear facilities," and it also cites a general provision in the collective bargaining agreement vesting management of the properties of the company exclusively in FPL. However, the exclusion clause is vague, not express, and inferring a purpose to exclude based on public-policy grounds goes beyond our threshold inquiry of arbitrability and improperly encroaches on the merits of the dispute. *See Warrior & Gulf Navigation Co.*, 363 U.S. at 584–85, 80 S.Ct. at 1354; *see also NextEra Energy*, 762 F.3d at 596; *IBEW*, 580 Fed.Appx. at 869. FPL puts forth no other "forceful evidence" or legal argument in satisfaction of its burden.

In short, FPL has provided no "positive assurance" that the arbitration clause does not cover this dispute. *See AT & T Techs., Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419. Applying the presumption of arbitrability, we resolve any doubts about the scope of the grievance and arbitration provisions in favor of coverage, and find, therefore, that the dispute is arbitrable as a threshold matter. To be clear, we do not hold that the arbitrator may, in fact, review FPL's revocation of Kohl's unescorted-access privileges, and, as we indicated in our previous opinion, that question may now be moot. *IBEW*, 580 Fed.Appx. at 869. We express no opinion on these matters. *See NextEra Energy*, 762 F.3d at

596. But, as we also indicated in our previous opinion, IBEW's request for Kohl to be reinstated to his previous position and to receive backpay is not moot. *Id.*

### V.

In sum, the grievance and arbitration provisions in the parties' collective bargaining agreement are reasonably susceptible of an interpretation that covers FPL's determination of access rights. Thus, the agreement is ambiguous, and the presumption of arbitrability applies. Because FPL has not rebutted the presumption, any doubts are resolved in favor of coverage. Consequently, we affirm the district court's order compelling arbitration.

**AFFIRMED.**